## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN CADET<br>3816 4th Street, N.W.<br>Washington, DC  20011, and<br><br>YVES CADET,<br>3816 4th Street, N.W.<br>Washington, DC  20011,<br><br>                    Plaintiffs,<br><br>          v.<br><br>DRAPER & GOLDBERG, PLLC,<br>DAVID W. DRAPER, JR.,<br>L. DARREN GOLDBERG<br>803 Sycolin Road, Suite 301<br>Leesburg, VA  20175,<br><br>ALEX COOPER AUCTIONEERS, INC.<br>908 York Road<br>Towson, MD  21204,<br><br>WELLS FARGO HOME MORTGAGE, INC.<br>1 Home Campus<br>MAC X2401-06T<br>Des Moines, IA  50328-0001,<br><br>WELLS FARGO BANK, N.A.<br>420 Montgomery Street<br>San Francisco, CA 94104, and<br><br>G.E. CAPITAL MORTGAGE SERVICES, INC.<br>c/o WMC Direct<br>3100 Thornton Avenue<br>Burbank, CA  91504,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## NOTICE OF REMOVAL

LDR/159477.1

PLEASE TAKE NOTICE that Defendants Wells Fargo Bank, N.A. (for itself and as successor to Wells Fargo Home Mortgage, Inc.) and G.E. Capital Mortgage Services, Inc. ("G.E. Capital") hereby remove this action pursuant to 28 U.S.C. §§ 1441, et seq., from the Superior Court of the District of Columbia, and state as follows:

1.    A civil action was commenced on August 26, 2005, and is now pending in the Superior Court of the District of Columbia captioned as John Cadet, et al. v. Draper & Goldberg, PLLC, et al., Civil Action Number 05-006858 RP (the "State Court Action"). The Complaint claims violations of state law, and requests damages of $21 million and equitable relief.

2.    Plaintiffs, upon information and belief, are citizens of the District of Columbia.

3.    Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association organized under the laws of the United States. Wells Fargo is not a citizen of the District of Columbia for diversity purposes. Wells Fargo Home Mortgage, Inc. was not as of the time of the filing of the State Court Action and is not as of the time of this Notice of Removal a separate juridical entity. Rather, it was and is a division of Wells Fargo based in Iowa.

4.    G.E. Capital is a North Carolina corporation with its principal place of business in California.

5.    Draper & Goldberg, PLLC is a Virginia professional limited liability company. All of its members are citizens of Virginia. It is therefore a citizen of Virginia for purposes of 28 U.S.C. § 1332.

6.    David W. Draper, Jr. is a citizen of Virginia.

7.    L. Darren Goldberg is a citizen of Virginia.

8.    Alex Cooper Auctioneers, Inc. ("Alex Cooper"), upon information and belief, is a Maryland corporation with its principal place of business in Maryland.

9.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. This civil action is between citizens of different states, with complete diversity. The allegations upon which Plaintiffs base this action involve matters in controversy that exceed the sum or value of $75,000, exclusive of interest and costs. This action may thus be removed to this Court pursuant to 28 U.S.C. § 1441(a).

10.     On September 27, 2005, Defendants Wells Fargo and Alex Cooper first received a copy of the Complaint.

11.     Defendant G.E. Capital received a copy of the Complaint no earlier than September 27, 2005.

12.     Defendants Draper & Goldberg, PLLC, David W. Draper, Jr. and L. Darren Goldberg were served on or subsequent to October 18, 2005.

13.     This Notice of Removal is being filed within thirty (30) days of the date on which Defendants received a copy of the Complaint, the initial pleading setting forth the claims against Defendants and from which Defendants first became aware of the claims in this action. Annexed to this Notice, in accordance with 28 U.S.C. § 1446, are copies of all papers, pleadings, and orders received by Wells Fargo and G.E. Capital.

14.     Defendants Draper & Goldberg, PLLC, David W. Draper, Jr., L. Darren Goldberg and Alex Cooper all consent to the removal and file herewith consents to such removal.

15.     Wells Fargo and G.E. Capital will file a copy of this Notice with the Clerk of the Superior Court of the District of Columbia, in accordance with 28 U.S.C. § 1446(d).

16.     Defendants expressly reserve all rights and defenses relating to Plaintiffs' claims.

WHEREFORE, Wells Fargo and G.E. Capital respectfully request that the State Court
Action be removed to this Court for all purposes.

Respectfully submitted,

_____
Gary C. Tepper (D.C. Bar No. 348698)
Maha Jweied (D.C. Bar No. 490852)
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5339
(202) 857-6000

Attorneys for Defendants
Wells Fargo Bank, N.A. (for itself and as successor to
Wells Fargo Home Mortgage, Inc.) and G.E. Capital
Mortgage Services, Inc.

Dated: October 27, 2005

## CERTIFICATE OF SERVICE

I certify that I have this 27th day of October, 2005, caused the foregoing Notice of

Removal to be served by mail, first class, postage prepaid, upon:

> John Cadet
> 3816 4th Street, N.W.
> Washington, DC 20011
>
> Yves Cadet
> 3816 4th Street, N.W.
> Washington, DC 20011
>
> Diane Rosenberg
> Mark D. Meyer
> Rosenberg & Associates, LLC
> 7910 Woodmont Avenue
> Bethesda, MD 20914
>
> David McPherson
> Draper & Goldberg, PLLC
> 803 Sycolin Road, Suite 301
> Leesburg, VA 20175

# IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JOHN CADET                                    )
3816 4TH Street, N.W.                          )
Washington, D.C. 20011                        )
                                              )
          and                                 )
                                              )
YVES CADET                                    )
3816 4th Street, N.W.                          )
Washington, D.C. 20011                        )
                                              )
          v.                                  )     Civil Action No.:_____
                                              )
DRAPER & GOLBERG, PLLC                        )
DAVID W. DRAPER, JR., TRUSTEE                 )
L. DARREN GOLDBERG, TRUSTEE                   )
803 Sycolin Road, Suite 301                   )
Leesburg, Virginia 20175                      )
                                              )
Served:_____               )
                                              )
          and                                 )
                                              )
ALEX COOPER AUCTIONEERS, INC.                 )
5301 Wisconsin Avenue, N.W., #750             )
Washington, D.C. 20015                        )
                                              )
Served:_____               )
                                              )
          and                                 )
                                              )
WELLS FARGO HOME MORTGAGE,                    )
          INC.                                )
4926 Wisconsin Avenue, N.W.                    )
Washington, D.C. 20015                        )
          and                                 )
6601 Six Forks Road                           )
Raliegh, NC 27615                             )
                                              )
Served:_____               )
                                              )
          and                                 )

WELLS FARGO BANK, N.A.                    )
4926 Wisconsin Avenue, N.W.               )
Washington D.C. 20015                     )
                                          )
                                          )
                                          )
Served:_____            )
                                          )
        and                               )
                                          )
G.E. CAPITAL MORTGAGE                     )
SERVICES, INC.                            )
c/o WELLS FARGO HOME                      )
MORTGAGE, INC.                            )
4926 Wisconsin Avenue, N.W.               )
Washington, D.C. 20015                    )
        and                               )
6601 Six Forks Road                       )
Raliegh, NC 27615                         )
                                          )
Served:_____            )
                                          )
        Defendants.                       )
                                          )
_____          )

## COMPLAINT FOR FRAUD, MISREPRESENTATION, CONVERSION, BREACH OF CONTRACT, UNJUST ENRICHMENT, CIVIL CONSPIRACY, AND ESTOPPEL

### JURISDICTION

1.    Jurisdiction in this matter rests with this Court by virtue of the D.C. Code Title 11, Section 921 and the General Equity Powers of this Court.

### THE PARTIES

2.    John and Yves Cadet are husband and wife and were the highest bidders at a

public auction sale of the property that is the subject matter of this Complaint. The property is located in the District of Columbia.

3. L. Darren Goldberg, a Defendant in this matter, is an attorney engaged in the practice of law with the law firm of Draper & Goldberg, and was the Substitute Trustee in connection with the sale of the Subject Property at the public action held on July 15, 2004, as well as previously proposed auctions, and the party on whose behalf Defendant Alex Cooper undertook to advertise and auction the Subject Property on July 15, 2004, with the Plaintiffs being the successful bidders.

4. David Draper, a Defendant in this matter, is an attorney engaged in the practice of law with the law firm of Draper & Goldberg, and was the Substitute Trustee in connection with the sale of the Subject Property at one or more previously proposed public actions which were to be held prior to July 15, 2004, and a party, who is a Trustee under the Note held by Wells Fargo Home Mortgage, Inc., as attorney-in-fact for GE Capital Mortgage Services, Inc., and on whose behalf Defendant Alex Cooper and/or other auctioneers have undertook to advertise and auction the Subject Property on at least one other occasion.

5. Draper & Goldberg, PPLC, a Defendant in this matter, is a law firm, and was at all times relevant to this Complaint, a law firm engaged in the practice of law, with its place of business located at 803 Sycolin Road, Suite 301, Leesburg, Virginia 20175, and are licensed practitioners of law in the District of Columbia and attorneys for L. Darren Goldberg and David Draper, who have acted as Substitute Trustees in connection with the sale of the Subject Property and as attorneys for the Substitute Trustees. They are also attorneys for GE Capital Mortgage Services, Inc., and/or Wells Fargo Home Mortgage, Inc.

6.     Alex Cooper Auctioneers, inc. (hereinafter "Alex Cooper"), a Defendant in this matter is incorporated in and existing under the laws of the District of Columbia. Defendant Alex Cooper, at all times relevant herein, held itself out as a licensed public auctioneer, with its principal place of business located at 5301 Wisconsin Avenue, N.W., #750, Washington, D.C. 20015, and conducted the public auction for the sale of the Subject Property on July 15, 2004 and was also the proposed auctioneer at the previous scheduled public auctions of the Subject Property held on November 20, 2003.

7.     Wells Fargo Home Mortgage, Inc. (hereinafter "Wells Fargo Home Mortgage"), a Defendant in this matter, is an out of State corporate entity conducting mortgage lending business in the District of Columbia, with one of its principal places of business in the District located at 4926 Wisconsin Avenue, N.W., Washington D.C. 20015. Defendant Wells Fargo Home Mortgage is a subsidiary of Wells Fargo Bank, N.A., and is the current holder of the Note and Deed of Trust on the Subject Property in its capacity of attorney-in-fact for GE Capital Mortgage Services, Inc.

8.     Wells Fargo Bank, N.A. (hereinafter "Wells Fargo Bank"), a defendant in this matter, is an out of State corporate entity conducting banking and mortgage lending business in the District of Columbia, with one of its principal places of business in the District located at 4926 Wisconsin Avenue, N.W., Washington, D.C. 20015. Defendant Wells Fargo Bank owns Wells Fargo Home Mortgage. Defendant Wells Fargo Bank had extended a pre-approved loan in an amount of at least $500,000.00 to the Plaintiffs to purchase the Subject Property subject to certain General Conditions and subsequently refused to loan Plaintiffs the necessary funds for

-4-

reasons other than their failure to satisfy any of the General Conditions, thereby breaching the pre-approved loan agreement with the Plaintiffs.

9.    GE Capital Mortgage Services. Inc. (hereinafter "GE"), a Defendant in this matter, is an out of state corporate entity conducting mortgage lending business in the District of Columbia, with one of its principal places of business in the District located at 4926 Wisconsin Avenue, N.W., Washington, D.C. 20015. Defendant GE, is the legal and true holder of the Note and Deed of Trust on the Subject Property held by Wells Fargo Home Mortgage, as attorney-in-fact for Defendant GE, and has been the holder of said Note and Deed of Trust since at least October 1998 except that Defendant Wells Fargo Home Mortgage may have been the holder of those instruments for a period of time beginning in November 2002 and ending at a time unknown at this time instead of holding said Note and Deed of Trust as attorney-in-fact for GE.

## THE BACKGROUND

10.    On or around June 20, 2004, the Plaintiffs decided that they would like rent out the home where they presently reside and purchase a home in the District of Columbia (hereinafter "District") for their family in a better neighborhood. With this objective in mind, the Plaintiffs began scanning the newspapers in search of property suitable for their purposes.

11.    On or about May 10, 2004, and June 12, 2004, Plaintiff John and Yves Cadet were going through the section of the Washington Times (hereinafter "Times") where properties for sale are advertised. Plaintiff Yves Cadet came across an Advertisement ("Ad") for the sale of property located at 2948 Albemarle Street, N.W., Washington, D.C. 20008 (hereinafter " the Subject Property") at a public auction to be held on July 15, 2004, which property is also known

-5-

as Lot 822 and Square 2043. A copy of the Advertisement is attached hereto and incorporated herein.

12.    The Ad was placed by Defendant Alex Cooper on behalf of Defendant Draper & Goldberg, the Substitute Trustee. According to the Ad, in pertinent part, there was to be a "SUBSTITUTE TRUSTEE'S SALE OF VALUABLE property known as 2948 Albemarle St., NW Washington, DC 20008. By virtue of a Deed of Trust, . . . at the request of the secured party thereby, the undersigned Substitute Trustee will offer to sell at public auction within the offices of Alex Cooper Aucts., Inc., on July 15, 2004 at 10:30 A.M., the land and premises situated in the District of Columbia, and designated as and being Lot 822 in Square 2043, and more particularly described in said Deed of Trust. TERMS OF SALE: A deposit of $30,00.00 will be required at the time of sale in cash or certified funds, except from secured party. Property sold "AS IS" condition. Subject to liens of record. Conveyance by special warranty deed. Settlement in 30 days. If Sub. Trustee cannot convey insurable title, purchaser's sole remedy is return of deposit. Additional sale terms announced at sale . . . .". The undersigned Substitute Trustee named in the Ad was Defendant L. Darren Goldberg.

13.    After carefully examining the Ad in question, the Plaintiffs decided to attend the public auction and bid on the Subject Property because it appeared to them that said property would be suitable for their purposes. They thought that the Subject Property would be suitable for their needs because of the location, the good schools in the area, the nearby shops, and the fact that it was five (5) minutes away and accessible to many areas that the Plaintiffs visited and where they stopped.

-6-

14.     Consequently, the Plaintiffs went to Market Street Mortgage, located in Burtonsville, Maryland, and applied for a pre-approved loan in order to purchase the Subject Property. By letter dated July 7, 2004, the Plaintiffs were notified by Market Street Mortgage that they had been pre-approved for a loan in the amount of $526,000.00, subject to a satisfactory appraisal, termite and underwriting approval.

15.     At that time, the Plaintiffs did not have the opportunity to inspect the Subject Property before the auction because it was not accessible due to the wall and fence enclosure surrounding it. However, the Plaintiffs did have an opportunity to view the Subject Property at a distance by driving around the street where it is located a few days before the auction of July 15, 2004.

16.     On the morning of July 15, 2004, the Plaintiffs attended the auction held at the office of Defendant Alex Cooper. They bidded on the Subject Property and were the successful bidders with a bid of $500,000.00.

17.     There were only two other participants in attendance at the auction besides the Plaintiffs. One of them was the tenant who was occupying and continues to occupy the Subject Property. The other participant at the auction was Marcia A. Wiss. Both Wiss and the tenant were aware of the amount of the balance due on the mortgage Note held by Wells Fargo Home Mortgage and both were aware of the history of the Subject Property including its insurability issues. For reasons unknown to the Plaintiffs, both Wiss and the tenant ran up the bid all the way up to $499,000.00, despite knowing the balance due under the mortgage Note and history of the Subject Property.

-7-

18.    Unbeknownst to the Plaintiffs, Ronald G. MacDonald and Marcia Wiss, who upon information and believe are husband and wife, had already made an offer of $250,000.00 for the Subject Property, which was apparently rejected, and they were also collecting the rent on said property.  Moreover, unbeknownst to the Plaintiffs, MacDonald and Wiss, who are owners of property adjacent to the Subject Property located at 3000 Albemarle Street, N.W., Washington, D.C. 20008, have a driveway easement in their favor existing on the Subject Property. The driveway portion of their property overlaps 6 to 8 feet on a portion of the Subject Property as a conveyed easement, and interferes with and blocks the main entry way to the Subject Property causing it to be unmarketable and an impediment to the conveyance of insurable title to the Subject Property. MacDonald and Wiss had the opportunity to purchase the Subject Property from the same grantor from whom they purchased their property the dominant plat, but did not do so.  The existence of a driveway easement on the Subject Property is not readily discernible through a physical inspection of the property by a good faith purchaser.

19.    The Plaintiffs  were also unaware at the time of the auction that (1) the Subject Property  was  subject to a (take as is) tenancy; (2) the Subject Property was registered with the D.C. Surveyor's Office as a record lot, instead of a survey lot, for taxation and assessment purposes, which means that there can be no building or remodeling of the existing structure on said property without obtaining a modification of the lot from the Surveyor's Office for which a fee must be paid; and (3) the value of the home on the Subject Property was substantially less valuable than the land, thereby causing said Property to be unmarketable, thus affecting insurability. After the auction on July 15, 2004, the Plaintiffs were informed by Wiss that they could never build on the Subject Property, but did not explain the reason why they could not do

-8-

so.

20.   Before entering the auction, the Plaintiffs tendered to Defendant Alex Cooper an earnest money deposit over the amount of Thirty Thousand ($30,000.00) Dollars in the form of a cashier's check as required by Defendant Alex Cooper.  The Plaintiffs signed a "Memorandum of Sale" provided by Alex Cooper which specified the terms of the sale of the Subject Property. **A copy of the "Memorandum of Sale" is attached hereto and incorporated herein.**

21.   The Memorandum of Sale expressly provided, in pertinent part, that "If the trustee is unable to convey insurable title to this property for any reason, the sole remedy of the purchaser is the return of the deposit.  Reasons for such inability include but are not limited to, the filing of a bankruptcy petition prior to the sale and reinstatement of the loan without the knowledge of the Trustee(s)."

22..   The Memorandum of Sale also expressly provided, in pertinent part, that "Settlement must be within 30 days of the sale date.  Time is of the essence.  If settlement does not occur within this time, the deposit may be forfeited, and the trustees may avail themselves of all other legal or equitable rights against the defaulting purchaser."

23.   In addition, the Plaintiffs signed a "Memorandum of Purchase At Public Auction" (hereinafter "Memorandum of Purchase") provided by Defendant Alex Cooper stating, in pertinent part, that they had purchased the Subject Property for $500,000.00 and had paid an earnest money deposit in the amount of $30,000.00, which was also signed by an agent for Defendant Alex Cooper.  **A copy of the Memorandum of Sale is attached hereto and incorporated herein.**

24.    Upon leaving the auction, the Plaintiffs provided a copy of the Memorandum of Sale to Market Street Mortgage in order to proceed with settlement within 30 days of the auction.

25.    On July 20, 2004, an Appraisal of the Subject Property was conducted by Market Street Mortgage.  Shortly thereafter, in August 2004, Market Street Mortgage orally notified the Plaintiffs that it would  not be able to go forward with the loan for purchase of the Subject Property because of "Inadequate or unacceptable collateral" even though the Subject Property appraised for $500,000.00.  Market Street Mortgage informed the Plaintiffs, however, that it would be able to extend the loan to them for another property because they were pre-approved for a loan.  For reasons this lender did not explain, it considered the Subject Property a totally unacceptable  financing risk.

26.    The loan officer at Market Street Mortgage, while denying their request for the loan to purchase the Subject Property, indicated that he would try to go to a different underwriter to see if the loan would be approved.  The Plaintiffs obtained a written denial of their loan request from Market Street Mortgage by letter dated September 27, 2004 stating the Subject Property constituted "inadequate collateral."

27.    Acting in good faith, the Plaintiffs volunteered to Defendant Draper & Goldberg that they would go to another lender, Money Tree Funding, LLC, located at 342 Hungerford Drive, Rockville MD 20850 and they immediately followed through and applied for a loan  with Money Tree Funding on or about August 1, 2004.  However, the same issue concerning the inadequacy/unacceptability of the Subject Property re-surfaced again.  The Plaintiffs were informed by Money Tree Funding on October 4, 2004 that Money Tree Funding could not  make a loan for the purchase of the Subject Property due to the fact that said property "does not

-10-

conform with its R-1-A zone" and "Therefore, its value as "collateral for the proposed loan is very inadequate." Money Tree Funding also stated that the Subject Property "cannot receive financing mainly due to the fact that it has been grossly inadequate and misrepresented." Defendant Draper & Goldberg were made aware of this loan rejection.

28.      The Plaintiffs contacted Defendant Alex Cooper on August 15, 2004 and apprised them of Market Street Mortgage's refusal to extend a loan for the purchase of the Subject Property and the reason for its refusal. Defendant Alex Cooper referred them to Defendant Draper & Goldberg. The Plaintiffs then contacted Draper & Goldberg on or about the same date and explained the situation with respect to their unsuccessful efforts to obtain a loan from Market Street Mortgage to purchase the Subject Property.

29.      On September 10, 2004, the Plaintiffs wrote a letter to Defendant Wells Fargo Bank informing said Defendant, as the holder of the mortgage note on the Subject Property, that they were the winning bidders at the public auction sale of the Subject Property on July 15, 2004, that they had tendered an earnest money deposit in the amount of $30,000.00, and that they were requesting a refund of their deposit.

30.      In their September 10th letter to Wells Fargo Bank, the Plaintiffs explained the problem that they were having in obtaining the financing to consummate the purchase of the Subject Property. The letter stated, in pertinent part, "Since July 15, we have attempted to get financing for the property, but have been unable to because the lot is considered not buildable due to a lack of legal easement to the street from the property. In order to build on the lot, an easement must be granted from the adjacent property, 3000 Albemarle St., N.W., Washington,

-11-

D.C. 20008. We have been informed that owners of 3000 Albemarle St. N.W. – who may also have an interest in keeping the property at 2948 Albemarle St. N.W. from being sold to any outside buyers – are unwilling to grant this easement. Further, we could not have known the property was not buildable at the time of the auction, especially considering the limited information provided by the auction house . . . . " The Plaintiffs further explained in the letter that the failure to consummate the sale was not due to their inability to qualify for the loan, but "the circumstances surrounding the legal status of the property" that have prevented the lenders from extending the necessary loan. The two lenders referred to in the Plaintiffs' letter were Market Street Mortgage and Money Tree Funding.

31.     Defendant Wells Fargo Bank never responded to the Plaintiffs letter of September 10th.

32.     By letter dated September 14, 2004, Defendant Draper & Goldberg informed the Plaintiffs, in pertinent part, as follows: "Pursuant to the terms of the Memorandum of Sale, time is of the essence in settling this transaction. Accordingly, you must tender the balance of the purchase price within ten (10) days from the date of this letter. Your failure to do so will result in a breach of the agreement. Upon such a default, the Substitute Trustees are authorized to, among other things, retain your earnest money Deposit as liquidated damages. **Please be advised that we must receive the full balance the Purchase Price on or before 09/27/04. If the required funds are not received by said date, your Deposit shall be deemed forfeited and the Substitute Trustees will arrange for the immediate resale of the premises.**"

33.     Upon receiving the September 14th letter from Defendant Draper & Goldberg, the Plaintiffs contacted Defendant Draper & Goldberg and requested an extension of time in order to

-12-

protect their deposit and try to secure a loan to purchase the Subject Property.

34.    On or about September 20, 2004, after receiving the September 14, 2004 letter from Defendant Draper & Goldberg, the Plaintiffs telephoned them and asked for more time and said Defendants agreed to give them more time to try and secure the financing on the Subject Property. No specified time was given.

35.    By letter dated September 27, 2004, the Plaintiffs informed Defendant Draper & Goldberg, through their employee Nevine Kamel, that it was not practical for them to obtain a loan on the Subject Property because the first lender had told them that the house on the property is 80% less valuable than the land and is a "tax deed," and the second lender declined their loan application because it estimated that the value of the property does not meet the level sufficient for collateral. The Plaintiffs further informed Defendant Draper & Goldberg that the ten (10) days that the firm had given them to tender the balance of the purchase price for the Subject Property were insufficient for them to obtain a loan and that they needed at least an additional 30 days to continue their efforts to secure a loan.

36.    In addition, the Plaintiffs, in their letter of September 27, 2004, informed Defendant Draper & Goldberg that they had applied for a loan with Defendant Wells Fargo Bank and had expected to know whether the loan was approved by September 23, 2004, but that when they called Wells Fargo Bank on September 27, 2004, the same date of their letter, Wells Fargo told them that they needed another 48 hours to respond to them concerning the loan. The Plaintiffs asked that Defendant Draper & Goldberg notify Defendant Alex Cooper that the ten days were "pragmatically insufficient" and that they must be granted an additional 30 days to try and secure a loan.

37.    Despite the problems the Plaintiffs were encountering in their efforts to obtain a loan to purchase the Subject Property, the Plaintiffs continued to express great interest in acquiring the property to Defendants Draper & Goldberg. However, because of the difficulty they were having in obtaining a loan to purchase the Subject Property so as to be unable to go forward with settlement through no fault of their own, the Plaintiffs telephoned Defendant Draper & Goldberg asking for their earnest money deposit to be refunded to them, explaining that they were approved for a mortgage loan but the lenders would not extend the loan for the Subject Property in particular.

38.    On September 29, 2004, Defendant Draper & Goldberg, through their employee Nevine Kamel, referred the Plaintiffs to another lender, namely, 1st American Mortgage, Inc., located at 8616 Westwood Center Drive, Vienna, Virginia 22182. Ms. Kamel informed the Plaintiffs that she and the Loan Officer at 1st American Mortgage, Inc., Ramin Noori, were personal friends, and that she was sure that Ramin Noori would be able to approve a loan on the Subject Property for them. Ms. Kamel also stated "Do not worry about the thirty days to settle, we [Draper and Goldberg] will extend until you settle." Consequently, the Plaintiffs felt very comfortable that Defendant Draper & Goldberg, being that they were a law firm, were working with them to have the sale consummated by helping them to obtain the necessary loan to purchase the Subject Property.

39.    On or about September 29, 2004, the Plaintiffs applied with 1st American Mortgage for the loan on the Subject Property. 1st American Mortgage approved the Plaintiffs for a mortgage loan in the amount of at least of Five Hundred Thousand ($500,000.00) dollars on September 30, 2004.

-14-

40.    However, on October 16, 2004, soon after 1ˢᵗ American Mortgage conducted its Appraisal of the Subject Property on the same date, the Loan Officer of 1ˢᵗ American Mortgage, Ramin Noori, (friend of Nevine Kamel at Draper & Goldberg) telephoned Plaintiff Yves Cadet and set up a three-way conversation between her, Nevine Kamel, and Plaintiff Yves Cadet. Ramin Noori then went on to state that they (1st American Mortgage) would not be able to extend the loan because the Subject Property is "unacceptable and inadequate Collateral." Plaintiff Yves Cadet then stated to Nevine Kamel that "this is the third lender turning us down for the same reason. It is no fault of our own." In response, Nevine Kamel, Defendant Draper & Goldberg's agent, said, " I am sorry, we are keeping your Thirty Thousand ($30,000.00) Dollars because you defaulted."

41.    After the aforementioned conversation ended with Nevine Kamel of Defendant Draper & Goldberg and Ramin Noori of 1st American Mortgage, Plaintiff Yves Cadet hung up her phone, but immediately picked it back up to make another call when she overheard Nevine Kamel and Ramin Noori discussing Plaintiff Yves Cadet and her husband. She heard Kamel Nevine state to Ramin Noori: "They are greedy, what do they think to buy a property for $500,000 in a location where houses are selling for two million. If the property was so valuable the attorneys in her firm will purchase it themselves." Ramin Noori further stated, "Why do you give me these trash customers, where are they from anyway."

42.    Afterwards, the Plaintiffs telephoned Ramin Noori to let him know that he had no right to call them by derogatory names because he did not know them.

43.    Thereafter, on or about September 29, 2004, the Plaintiffs, acting out of

-15-

desperation so as not to lose both their $30,000.00 earnest money deposit, which they had borrowed against their home, and the Subject Property, then contacted Defendant Wells Fargo Bank and spoke with its Loan Officer, Maureen Frisby.

44.    On September 29, 2004, the Plaintiffs were approved by Defendant Wells Fargo Bank for a loan in the amount of $450,000.00 to purchase the Subject Property. Defendant Wells Fargo Bank issued a Notice of Loan Commitment dated September 29, 2004 stating, in pertinent part, that they were approving the Plaintiffs loan application with respect to the Subject Property for a loan in the amount of $450,000.00. Defendant Wells Fargo Bank also provided the Plaintiffs with a copy of its Commitment letter dated September 29, 2004 detailing the terms and conditions of the loan to them.

45.    In addition to the Commitment letter providing that the Plaintiffs were approved for a loan in the amount of $450,000.00, the letter contained "General Conditions" to which approval of the loan was subject, none of which the Plaintiffs believes they failed to satisfy then or now.

46.    In an attempt to try and find out why prospective lenders considered the Subject Property to be "unacceptable," Plaintiffs then went to the D.C. Department of Consumer and Regulatory Affairs (DCRA), Zoning Office to ascertain whether the property was properly zoned for Residential use, in view of the fact that it was tenant occupied. They investigated whether there existed a Certificate of Occupancy for the premises on the Subject Property and whether any further building on said Property was possible. The Plaintiffs discovered that the Subject Property could be further built on after it has been surveyed. They then applied to the Zoning Office for approval to change the lot from a tax lot to a record lot for building purposes and such

-16-

approval was granted.

47. By letter dated October 20, 2004, the DCRA, Office of the Zoning
Administrator, responded to the Plaintiffs inquiries concerning the zoning status of the Subject
Property, through their then attorney, Nathaniel Sims. The letter stated that the Subject Property
is residentially zoned R-1-A under District laws. The letter further stated that ". . . the R-1 zone
is designed to protect quiet residential areas developed with only one family detached dwellings
and adjoining vacant areas likely to be developed for that purpose. The R-1 district is sub-
divided by differing area requirements into R-1-A and R-1-B districts. Low density in the R-1-A
zone is 7,500 Square Feet of land and high density in the R-1-B zone is 5000 Square feet of land
for each housing unit." It was explained in the letter that the Zoning Office had no record of
fines or penalties for any zoning violations at the Subject Property, but could not "definitely
confirm without a site visit, the non-existence of any non-conformity of structure with regard to
this Property." It was further explained that any non-conformity of structure occurring after May
12, 1954 would only have been permitted by a Board of Zoning Adjustment (BZA) Variance or
Special Exception and that their office should be contacted to ascertain the existence of any such
variance.

48. On or about October 25, 2004, the Plaintiffs received a letter from Defendant
Draper & Goldberg dated October 21, 2004, notifying them that they are in default, and that as a
result of their breach of the agreement (the Memorandum of Sale), the Substitute Trustees are
authorized and elect to retain their deposit **"as liquidated damages and arrange for the
immediate resale of the premises."** No provision for liquidated damages was contained in the
Memorandum of Sale or any other agreement between the Plaintiffs and Defendants.

-17-

49.    On or about October 29, 2004, Plaintiffs' then counsel, on behalf of the Plaintiffs, conducted a title search of the Subject Property and discovered that approximately ten (10) Notice of Foreclosure Sale had been issued against the same owner involving the Subject property from December 1990 through June 10, 2004. He also discovered that the Subject Property had been auctioned off at public auctions on several occasions during that same time period without there being a consummated sale for unknown reasons and that almost all of the Defendants had been involved in one capacity or another with the Notice of Foreclosure Sale and/or the auction since April 30, 1999.

50.    On or about October 30, 2004, the Plaintiffs received a Statement of Credit Denial, Termination, or Change from 1st American Mortgage, with a mailing date of October 22, 2004, stating that their loan application for credit in the amount of $475,000.00 had been declined and stated the reason for its decision as being "Unacceptable Property."

51.    Plaintiffs also went to the D.C. Surveyor's Office in November, 2004, and ordered a survey of the Subject Property and submitted a request to have the tax lot made into a record lot because said property was a subdivided lot for assessment and taxation purposes only.

52.    On or about November 4, 2004, Plaintiffs' then counsel, also discovered that the Subject Property was subject to an easement held by MacDonald and Wiss granted to them by James and Iraline Barnes in the Deed dated April 30, 1999 conveying 3000 Albemarle Street, N.W., to them.

53.    On or about November 19, 2004, after conducting an Appraisal of the Subject Property not just once but twice to ensure an accurate Appraisal, Defendant Wells Fargo Bank,

-18-

despite being the current Note holder on said property, sent the Plaintiffs a "Notice of Action Taken and Statement of Reasons" (hereinafter "Notice of Action") denying the loan for substantially the same reason(s) as the other prospective lenders, which was "Value or type of collateral not sufficient." Defendant Wells Fargo Bank also indicated as a reason for its denial of the loan that it was "Unable to verify residence." Defendant Wells Fargo Bank did not mention any of the General Conditions contained in its Commitment letter as being the reason for the denial of the loan to the Plaintiffs.

54.     On November 30, 2004, Plaintiff John Cadet sent a letter to Defendant Wells Fargo Bank requesting, in pertinent part, a statement clarifying what it meant by "Value or type of collateral not sufficient" and "Unable to verify residence," the reasons it gave for declining their loan application in connection with the Subject Property.

55.     On or about December 1, 2004, the Plaintiffs saw an Ad in the Washington Times wherein the Subject Property was being advertised by Defendant Alex Cooper for sale at a public auction to be held on December 9, 2004 at 10:30 a.m. with almost identical information as that contained in its Ad for the sale of said property on July 15, 2004.

56.     Upon discovering that Defendant Alex Cooper, on behalf of Defendant Draper and/or Goldberg, was intending to re-auction the Subject Property on December 9th, the Plaintiffs contacted their then counsel and requested that he file a Complaint against the Defendants and petition the Court for a TRO and Preliminary Injunction to stop the proposed auction, and recover their earnest money deposit, damages and other appropriate relief against the Defendants.

57.     The Plaintiffs' then counsel was in the process of carrying out the Plaintiffs

-19-

instructions when he was informed, upon contacting Defendant Draper & Goldberg on December 8, 2004 in order to comply with SCR. Civ. Rule 12-I (a), that the proposed auction for December 9th had been cancelled due to the fact that the owners of the Subject Property, James and Iraline Barnes, had filed for bankruptcy, thereby precluding said Defendant and Defendants Wells Fargo Home Mortgage and Wells Fargo Bank, by operation of law, from trying to sell said property.

58.    By letter dated December 10, 2004, Defendant Wells Fargo Bank responded to the Plaintiffs November 30, 2004 letter by stating that the denial of the loan they had applied for to purchase the Subject Property was due to the value of the type of collateral and the fact that the home on said Property does not contribute to the value because it is less than the land value as appraised.

**COUNT I**

**(FRAUD)**

59.    Paragraphs 1 through 58 are incorporated herein by reference and the Plaintiffs further state that all of the Defendants, individually and/or in concert, acted deceptively and fraudulently in that they  intentionally concealed material facts (inside information) affecting the marketability and insurability of the Subject Property from the Plaintiffs and other members of the public, including but not limited to, (1) that the Subject Property had been the subject of foreclosure action on approximately nine (9) previous occasions over a period of about ten (10) years; (2) that the Subject Property had been offered for sale at public auction on several previous occasions over a period of several years without a consummated sale; (3) that the Subject Property was subject to an easement; (4) that the Subject Property was subject to a tenancy;  (5) it

-20-

was registered with the D.C. Surveyor's Office as a record lot, instead of a survey lot, for taxation and assessment purposes, which means that there can be no building or remodeling of the existing structure on the Subject Property without the Surveyor's Office being requested to and issuing a survey plat for said property; and (6) the value of the home on the Subject Property was substantially less valuable than the land.

60.     The Defendants, individually and in concert, knew or should have known that the Subject Property, in view of its insurability issues, was not conducive to a good faith purchaser acquiring insurable title, and knew or should have known that any successful bidder on said property at the public auction held on July 15, 2004 would in all likelihood be unable to secure the necessary financing to purchase the property because of its unmarketability and uninsurability, but failed to disclose all the material facts evidencing that the Substitute Trustee could not convey insurable title to the property.

61.     Furthermore, Defendants Alex Cooper and Draper and Goldberg, as agents for one or more of the other Defendants, acted deceptively and fraudulently by advertising the Subject Property as "valuable property" when they knew or should have known that said property's value was materially compromised so as to be unmarketable by the various insurability issues affecting the conveyance of insurable title to the property.

62.     Defendants, Draper & Goldberg, Alex Cooper, Wells Fargo Home Mortgage, GE, and Wells Fargo Bank, in concert and by agreement or understanding, acted deceptively and fraudulently by allowing MacDonald and Wiss, owners of the property adjacent to the Subject Property, to participate in and fraudulently run up the bid on said property at the public auction

-21-

sale held on July 15, 2004, with them tendering a final bid in the amount of $499,000.00, with

full knowledge that MacDonald and Wiss knew that the mortgage balance due under the

mortgage Note was approximately $300,000.00, that they had offered to buy the Subject Property

for $250,000.00 prior to the auction, and that they were collecting the rent from the tenant

occupying the Subject Property.

    63.    As a result of the aforesaid Defendants' deceptive and fraudulent conduct, the

Plaintiffs were induced by the Defendants to place an earnest money deposit in the amount of

$30,000.00 towards the purchase price of the Subject Property and to tender a bid in the amount

of $500,000.00 on the Subject Property so as to be the successful bidder with the reasonable

expectation that they would be able to obtain the necessary financing to consummate the

purchase of said property.

**COUNT II**

**(MISREPRESENTATION)**

    64.    The Plaintiffs, John Cadet and Yves Cadet , incorporates paragraphs 1 through 58

by reference and further states that the Defendants, Draper & Goldberg, Alex Cooper, Wells

Fargo Home Mortgage, Wells Fargo Bank, and GE are further liable for misrepresentation

because of their failure to return the Plaintiffs earnest money deposit after stating in writing, in

their Ad and "Memorandum of Sale," that the "purchaser's sole remedy is return of deposit" if

the Substitute Trustee, Defendant Draper & Goldberg, could not convey insurable title with

knowledge that insurable title could not be conveyed to the Subject Property because: (1) it is

subject to an easement that materially affects the conveyance of insurable title; (2) it is subject to

a tenancy that materially affects the conveyance of insurable title; (3) it was registered with the

-22-

D.C. Surveyor's Office as a record lot, instead of a survey lot, for taxation and assessment purposes, which means that there can be no building or remodeling of the existing structure on said property without being granted a variance by the Surveyor's Office; and (4) the value of the home on the Subject Property was substantially less valuable than the land, thereby causing said Property to be unmarketable, thus affecting insurability.

65.     Defendants' falsely stated in their Ad in the Washington Times and in the "Memorandum of Sale" that the "purchaser's sole remedy is return of deposit" if the Substitute Trustee, Defendant Draper & Goldberg could not convey insurable title in order to induce and cause the Plaintiffs to bid on the Subject Property based upon their belief, as a result of the Defendants' aforementioned statement, that their deposit would be refunded if they were the successful bidders and were then unable to obtain the financing necessary to consummate the sale due to the issues affecting the conveyance of insurable title, and the Plaintiffs, in fact, relied on the Defendants' statements to their detriment.

## COUNT III

## (BREACH OF CONTRACT)

66.     The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 58 by reference and further states that the Defendants Draper and Goldberg, Alex Cooper, Wells Fargo Home Mortgage, Wells Fargo Bank, and GE breached their contractual obligation to return the Plaintiffs' earnest money deposit if Defendant Draper and Goldberg, as Substitute Trustee, could not convey insurable title to the property, by failing to return the Plaintiffs deposit to them after four (4) lenders, including Defendant Wells Fargo Bank, refused to finance the Subject

-23-

Property and stated as the, sole or substantial, reason for their refusal that the property constitutes inadequate collateral, and informing them that they had forfeited said deposit due to their alleged inability to consummate the sale.

    67.    The aforesaid Defendants knew or should have known that insurable title could not be conveyed to the Subject Property because: (1) it is subject to an easement that materially affects the conveyance of insurable title; (2) it is subject to a tenancy that materially affects the conveyance of insurable title; (3) it was registered with the D.C. Surveyor's Office as a record lot, instead of a survey lot, for taxation and assessment purposes, which means that there can be no building or remodeling of the existing structure on the Subject Property without the Surveyor's Office being requested to and issuing a survey plat for said property; (4) the value of the home on the Subject Property was substantially less valuable than the land; and (5) it had been the subject of several unconsummated sales after being sold at public auction ostensibly because the successful bidders encountered the same problem as the Plaintiffs, namely, that they could not find a lender willing to finance the property because it is unmarketable due to its insurability issues.

    68.    The aforesaid Defendants also knew that securing financing to purchase the Subject Property was highly unlikely since it was virtually impossible to convey insurable title given the existing insurability issues. Furthermore, the Defendants' taking of the Plaintiffs earnest money deposit constitutes a breach of contract because the deposit was taken as liquidated damages and Plaintiffs never agreed to paying liquidated damages if they were unable

to obtain financing to purchase the property. The Memorandum of Sale fails to specify that the Plaintiffs would be liable for liquidated damages and the Defendants failed to show any actual costs incurred by them to support the forfeiture of the deposit. Defendants' refusal to return the Plaintiffs' earnest money deposit have caused the Plaintiffs extensive damage.

## COUNT IV

### (WRONGFUL CONVERSION)

69.    The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 58 by reference and further states that the Defendants, Draper & Goldberg, Alex Cooper, Wells Fargo Home Mortgage, Wells Fargo Bank, and GE have wrongfully converted their earnest money deposit in the amount of $30,000.00 in that they have failed and refused to return said deposit and have put it towards their own use intentionally, and without permission or justification, even though Defendant Draper and Goldberg, as Substitute Trustee, cannot not convey insurable title to Subject Property as the facts herein demonstrate, and were required to immediately refund the deposit to the Plaintiffs. Furthermore, the Defendants taking of the Plaintiffs earnest money deposit constitutes conversion because the deposit was taken as liquidated damages and Plaintiffs never agreed to paying liquidated damages if they were unable to obtain financing to purchase the property.

## COUNT V

### (UNJUST ENRICHMENT)

70.    The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 58

-25-

by reference and further states that the Defendants, having been involved in the sale of the Subject Property at public auction on several previous occasions over a period of several years without a consummated sale and being aware that the Subject Property was subject to an easement and other legal impediments that materially affected its insurability, knew or should have known that said property was not conducive to a good faith purchaser acquiring insurable title, and knew or should have known that any successful bidder on said Property at the public auction held on July 15, 2004 would in all likelihood be unable to secure the necessary financing to purchase the Property because of its insurability issues. Furthermore, the Defendants taking of the Plaintiffs earnest money deposit constitutes unjust enrichment because the deposit was taken as liquidated damages and Plaintiffs never agreed to paying liquidated damages if they were unable to obtain financing to purchase the Subject Property, and there is no evidence that they suffered any damages.

71.     Because of their having knowledge of material facts (inside information) affecting the insurability of the Subject Property, makes it inequitable for the Defendants to retain the Plaintiffs' earnest money deposit in the amount of $30,000.00 towards the purchase price of the Subject Property.

**COUNT VI**

**(CIVIL CONSPIRACY)**

72.     The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 58 by reference and further states that the Defendants, in concert and by agreement or understanding, acted deceptively and fraudulently in that they intentionally concealed material facts (inside information) affecting the marketability and insurability of the Subject Property

-26-

from the Plaintiffs and other members of the public, including but not limited to, (1) that the Subject Property had been the subject of foreclosure action on approximately nine (9) previous occasions over a period of about ten (10) years; (2) that the Subject Property had been offered for sale at public auction on several previous occasions over a period of several years without a consummated sale; (3) that the Subject Property was subject to an easement, not readily discernible by a good faith purchaser, that materially affects its insurability; (4) that the Subject Property was subject to a tenancy; (5) the Subject Property was registered with the D.C. Surveyor's Office as a record lot, instead of a survey lot, for taxation and assessment purposes, which means that there can be no building or remodeling of the existing structure on said property without obtaining a modification/variance (survey plat) of the lot from the Surveyor's Office for which a fee must be paid; and (6) the value of the home on the Subject Property was substantially less valuable than the land.

73.     Defendants, in concert and by agreement or understanding, knew or should have known that the Subject Property, in view of its insurability issues, was not conducive to a good faith purchaser acquiring insurable title, and knew or should have known that any successful bidder on said property at the public auction held on July 15, 2004 would in all likelihood be unable to secure the necessary financing to purchase the property because of its unmarketability and uninsurability, but failed to disclose all the material facts evidencing that the Substitute Trustee could not convey insurable title to the property.

74.     Defendants, Draper & Goldberg, Alex Cooper, Wells Fargo Home Mortgage, Wells Fargo Bank, and GE, in concert and by agreement or understanding, acted deceptively and fraudulently by allowing MacDonald and Wiss to participate in and fraudulently run up the bid

-27-

on the Subject Property at the public auction sale held on July 15, 2004, with them tendering a final bid in the amount of $499,000.00, with full knowledge that MacDonald and Wiss knew that the mortgage balance due under the mortgage Note was approximately $300,000.00, that they had offered to buy the Subject Property for $250,000.00 prior to the auction, and that they were collecting the rent from the tenant occupying said Property

75.    Furthermore, Defendants Alex Cooper, Draper and Goldberg, Wells Fargo Home Mortgage, Wells Fargo Bank, and GE, in concert and by agreement or understanding, acted deceptively and fraudulently by advertising the Subject Property as "valuable property" when they knew or should have known that said property's value was materially compromised so as to be unmarketable by the various insurability issues affecting the conveyance of insurable title to the property.

76.    As a result of the aforesaid Defendants' acting in concert to engage in deceptive and fraudulent conduct, the Plaintiffs were induced to place an earnest money deposit in the amount of $30,000.00 towards the purchase price of the Subject Property and to bid on the Subject Property so as to be the successful bidder with the reasonable expectation that they would be able to obtain the necessary financing to consummate the purchase of said property. Additionally, as a result of the aforesaid Defendants' deceptive and fraudulent conduct, the Plaintiffs were also induced to list their current place of residence on the market for rent, and incur unanticipated and unforeseeable expenses in connection with their successful bid on the Subject Property and their efforts to secure financing to purchase said property, including but not limited to, attorney's fees.

## COUNT VII

### (EQUITABLE ESTOPPEL)

77.    The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 58

by reference and further states that the Defendants Draper and Goldberg, Alex Cooper, Wells

Fargo Home Mortgage, Wells Fargo Bank, and GE are estopped from asserting a claim of

forfeiture against the Plaintiffs of their earnest money deposit having intentionally concealed

material facts (inside information) affecting the marketability and insurability of the Subject

Property from the Plaintiffs and other members of the public, including but not limited to, (1)

that the Subject Property had been the subject of foreclosure action on approximately nine (9)

previous occasions over a period of about ten (10) years; (2) that the Subject Property had been

offered for sale at public auction on several previous occasions over a period of several years

without a consummated sale; (3) that the Subject Property was subject to an easement, not readily

discernible by a good faith purchaser, that materially affects its insurability; (4) that the Subject

Property was subject to a tenancy; (5) the Subject Property was registered with the D.C.

Surveyor's Office as a record lot, instead of a survey lot, for taxation and assessment purposes,

which means that there can be no building or remodeling of the existing structure on said

property without obtaining a modification of the lot from the Surveyor's Office for which a fee

must be paid; and (6) the value of the home on the Subject Property was substantially less

valuable than the land.

78.    All the aforesaid Defendants knew or should have known that the Subject

Property, in view of its insurability issues, was not conducive to a good faith purchaser acquiring

insurable title, and knew or should have known that any successful bidder on said property at the

-29-

public auction held on July 15, 2004 would in all likelihood be unable to secure the necessary financing to purchase the property because of its unmarketability and uninsurability, but failed to disclose all the material facts evidencing that the Substitute Trustee could not convey insurable title to the property.

79.    Furthermore, the aforesaid Defendants are estopped from asserting a claim of forfeiture against the Plaintiffs having acted deceptively and fraudulently by advertising the Subject Property as "valuable property" when they knew or should have known that said property's value was materially compromised so as to be unmarketable by the various insurability issues affecting the conveyance of insurable title to the property, thereby inducing the Plaintiffs to make an earnest money deposit in the amount of $30,000.00 towards the purchase price of the Subject Property with the reasonable expectation that they would be able to obtain the necessary financing to consummate the purchase of said property in the event they were the successful bidders.

## COUNT VIII

## (D.C. CONSUMER PROTECTION PROCEDURES ACT (CPPA))

80.    The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 58 by reference as if fully set forth herein as against Defendants Draper and Goldberg, Alex Cooper, Wells Fargo Home Mortgage, Wells Fargo Bank, and GE.

81.    Sections 28-3904(e) & (f) of the CPPA expressly makes it a violation for any person to misrepresent a material fact which has a tendency to mislead a consumer or to fail to state a material fact if such failure tends to mislead.

-30-

82.    Section 28-3904 ( r) of the CPPA prohibits the making of unconscionable contracts.

83.    The allegations of Counts I and II are incorporated additionally and cumulatively as violations of the CPPA.

84.    The misrepresentations of material facts or failures to state material facts were made with knowledge that they were false or that the omission would create a false understanding.

85.    Plaintiffs justifiably relied on these misrepresentations and/or failures to state material facts.

86.    Defendants' actions constitute unfair and deceptive practices within the meaning of the CPPA. As a direct and proximate result of the Defendants' actions, the Plaintiffs have wrongfully suffered the lost of the $30,000.00 loan they obtained and used as the earnest money deposit towards the purchase of the subject Property and have suffered damages in that: (a) they continue to have to pay interests and fees on the $30,000.00 loan money wrongfully converted by the Defendants, (b) they have been and continue to be under severe emotional stress because of having to acquire additional monies to pay attorneys fees, legal expenses and court costs in their effort to recover their earnest money deposit, ( c) their marriage has been placed under considerable and unnecessary stress and strain to the point where they may soon be forced to seek counseling in order to save their marriage, and (d) they have been foreclosed for years to come from being able to purchase property comparable to the purported value of the Subject Property and in a neighborhood comparable to the one where said property is located.

87.    Each Defendant agreed, explicitly or tacitly, to participate with other Defendants

-31-

in the acts alleged above, and their acts were in furtherance of a common scheme to wrongfully divest the Plaintiffs of their earnest money for unjust financial profit because of their love of money, which is idolatry.

88.     Each of the Defendants' acts alleged above aided the other Defendants and was in furtherance of a common scheme to wrongfully divest the Plaintiffs of their earnest money deposit for their unjust financial profit because of their love of money, which is idolatry.

89.     Defendants' violations of the CPPA intentional, willful and wanton, unjust and unconscionable and justify the imposition of treble and punitive damages.

**WHEREFORE**, the Plaintiffs respectfully request that this Honorable Court grant them relief as follows:

1.     Enjoin the appropriate Defendants and their agents from undertaking any public auction for the purpose of selling the Subject Property unless full disclosure of all material facts affecting the conveyance of insurable title to the said Property is first disclosed to members of the public who may now or in the future participate in such an auction.

2.     Order the appropriate Defendants to return the Plaintiffs' earnest money deposit, prejudgment interest on the deposit, and all fees and other monies paid to them by the Plaintiffs in connection with their bidding on the Subject Property.

4.     Award them compensatory and punitive damages in the amount of $21,000,000.00, plus attorney's fees, court costs and all other costs and expenses associated with this matter.

5.     Order the Defendants to provide an accounting to the Court of all earnest money deposits and other monies collected from all persons who have bidded on the Subject Property at

-32-

any public auction sale during the last 10 - 12 years.

        c.    Any other relief that this Court may deem just and proper.

Respectfully submitted,

Yves Cadet, Pro Se
3816 4TH Street, N.W.
Washington, D.C. 20011

(202) 722-6272 or (202) 390-3744

John Cadet, Pro Se
3816 4TH Street, N.W.
Washington, D.C. 20011

(202) 722-6272 or (202) 390-3744

Subscribed and sworn to before me, in my presence, this
25th day of August 2005, Notary Public
in and by the District of Columbia
Loretha F. Young
Notary Public
My Commission Expires _____ 20__

LORETHA F. YOUNG
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 14, 2006

-33-

## VERIFICATION

We, the undersigned Plaintiffs, hereby declare and affirm that we have read the foregoing

Complaint and that the averments contained therein are true and correct to the best of our

knowledge and belief.

John Cadet, Plaintiff                              Yves Cadet, Plaintiff

## JURY TRIAL DEMANDED ON ALL ISSUES

Respectfully submitted,

John Cadet, Pro Se

Subscribed and sworn to before me, in my presence, this
25th day of August 2005 a Notary Public
in and for the District of Columbia
Loretha F. Young
Notary Public
My commission expires _____ 20___

Yves Cadet, Pro Se

LORETHA F. YOUNG
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 14, 2006

-34-



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JOHN CADET
Vs.
DRAPER & GOLDBERG, PLLC

C.A. No.      2005 CA 006858 R(RP)

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge GEOFFREY M ALPRIN
Date: August 26, 2005
Initial Conference: 9:00 am, Friday, December 09, 2005
Location:   Courtroom 320
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

Caio.doc

## CERTIFICATE OF SERVICE

I certify that I have this 27th day of October, 2005, caused the foregoing Notice of

Removal to be served by mail, first class, postage prepaid, upon:

John Cadet
3816 4th Street, N.W.
Washington, DC 20011

Yves Cadet
3816 4th Street, N.W.
Washington, DC 20011

Diane Rosenberg
Mark D. Meyer
ROSENBERG & ASSOCIATES, LLC
7910 Woodmont Avenue
Bethesda, MD 20914

L. Darren Goldberg
Rita Ting Hopper
David McPherson
DRAPER & GOLDBERG, PLLC
803 Sycolin Road, Suite 301
Leesburg, VA 20175