**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN CADET, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>DRAPER & GOLDBERG, PLLC, et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 1:05cv02105 |

**DEFENDANTS WELLS FARGO BANK, N.A.'S, WELLS FARGO HOME MORTGAGE, INC.'S, AND G.E. CAPITAL MORTGAGE SERVICES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Wells Fargo Bank, N.A. (for itself and as successor to Wells Fargo Home Mortgage, Inc.) ("Wells Fargo") and G.E. Capital Mortgage Services, Inc. ("G.E.") have moved to dismiss the Complaint, pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Plaintiffs lost a $30,000 deposit on a $500,000 real estate contract they entered into at a foreclosure sale because they could not come up with the purchase price. Plaintiffs allege they were defrauded and should be awarded $21 million because Wells Fargo, G.E., and others who conducted the foreclosure sale should have disclosed to Plaintiffs various matters of public record, including the fact that there had been other attempts to hold a foreclosure sale on the property and that the property was subject to an easement for a neighbor's driveway. Nonetheless, the law is clear that there was no duty to disclose anything to Plaintiffs. Moreover, Plaintiffs in their Complaint concede that the contract expressly provided that the sale was "as is" without "any warranty" and that failure to pay within 30 days authorized a forfeiture of the deposit. As such, the Complaint fails to state a claim upon which relief may be granted.

LDR/161472.1

## I. BACKGROUND

Plaintiffs allege that Wells Fargo was the servicer for G.E. with respect to a home mortgage loan secured by property located at 2948 Albemarle Street, N.W., Washington, D.C. 20008 (the "Property"). Complaint ¶ 9. Plaintiffs allege that the substitute trustee for that loan was trustee L. Darren Goldberg and/or others ("Trustee") (Complaint ¶ 3), and that Alex Cooper Auctioneers, Inc. ("Alex Cooper") advertised a foreclosure sale of the Property to be held on July 15, 2004. Complaint ¶¶ 6, 11. Plaintiffs allege that a "copy of the Advertisement is attached . . . to and incorporated" into the Complaint at ¶ 11. A copy is also attached hereto as Exhibit ("Ex.") A.[1] The advertisement described the Property as "valuable" and required a deposit of $30,000 at time of sale. Complaint ¶ 12; Ex. A. Moreover, Plaintiffs allege that the Property was advertised to be:

> sold in "AS IS" condition. Subject to liens of record. Conveyance by special warranty deed. Settlement in 30 days. If Sub. Trustee cannot convey insurable title, purchaser's sole remedy is return of deposit. Additional terms announced at sale.

Id. at ¶ 12.

Plaintiffs appeared at the foreclosure sale on July 15, 2004, with the required earnest money deposit of $30,000. Id. ¶¶ 16, 20. Other prospective purchasers, including neighbors of the Property, were in attendance and bid on the Property, but Plaintiffs were the successful bidders with a bid of $500,000. Id. ¶ 16, 17. As the successful bidder, Plaintiffs signed a Memorandum of Sale with Trustee and tendered the $30,000 deposit. Id. ¶ 20. Plaintiffs allege that a "copy of the "Memorandum of Sale is attached . . . to and incorporated" into the

---

[1] The version of the Complaint that Wells Fargo and G.E. received contained no exhibits, although the Complaint purports to attach them.

Complaint at ¶ 20. The Memorandum of Sale is attached hereto as Ex. B.[2] The Memorandum of Sale provides that,

> The property is sold "as is" subject to all easements, liens, covenants, restrictions of record. The trustee(s) will not sign loan documents in which he makes any warranty with regard to the property.

Ex. B ¶ 1. It also provides that:

> Settlement must be within 30 days of the sale date. Time is of the essence. If settlement does not occur within this time period, the deposit may be forfeit, and the trustees may avail themselves of all other legal or equitable rights against the defaulting purchaser.

Complaint ¶ 22; Ex. B ¶ 6. The Memorandum of Sale further provides that "[i]f the Trustee is unable to convey insurable title to this property for any reason, the sole remedy of the purchaser is the return of the deposit." Complaint ¶ 21; Ex. B ¶ 5.

Plaintiffs were unable to secure the appropriate financing to complete the purchase, and requested an extension of time to settle, which Plaintiffs allege was granted on September 20, 2004 with "no specified time . . . given." Complaint ¶¶ 24-34. As of October 21, 2004, Plaintiffs concede they still had not obtained financing. Complaint ¶¶ 34-48. Plaintiffs allege that they applied for loans with a number of lenders, all of whom declined to make a loan because they deemed the Property to be "inadequate" collateral. Id. ¶¶ 25-27, 35, 40, 50, 53. After providing Plaintiffs more than three months to settle, when the Memorandum of Sale only required 30 days, in a letter dated October 21, 2004, Trustee notified Plaintiffs that they were in default of the terms of the Memorandum of Sale and that as a consequence the deposit was forfeited. Id. ¶ 48.

---

[2] Like the Advertisement, the Memorandum of Sale was not attached to the Complaint that Wells Fargo and G.E. received, although the Complaint purports to have attached this document.

Plaintiffs further allege that unbeknownst to them, the D.C. Surveyor's Office described the Property as a "record lot" rather than a "survey lot," the value of the home on the Property was less than the value of the land, and there was a driveway easement on the Property which was "conveyed" in favor of a neighboring lot. Id. ¶¶ 18-19, 49. Plaintiffs allege that their attorney at that time, Nathaniel Sims, performed a title search and search of the public records and discovered all of these issues, including the fact that the Property had been foreclosed upon previously. Id. ¶¶ 47, 49, 52.

On the basis of the foregoing, Plaintiffs claim fraud (Count I), misrepresentation (Count II), breach of contract (Count III), wrongful conversion (Count IV), unjust enrichment (Count V), civil conspiracy (Count VI), equitable estoppel (Count VII), and violation of the D.C. Consumer Protection Procedures Act (Count VIII).

## II. ARGUMENT

Ordinarily, a complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Nonetheless, even a pro se complaint must present a claim upon which the Court can grant relief. Henthorn v. Dep't of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994). Plaintiffs do not meet this standard because the face of the documents referred and attached to the Complaint plainly show that Plaintiffs cannot possibly prevail on any causes of action they plead.

### A.     Wells Fargo and G.E. Did Not Engage in Fraud.

In Count I, Plaintiffs allege that the Wells Fargo, G.E., and the other Defendants engaged in fraud.[3] Complaint ¶¶ 59-63. In the first instance, Plaintiffs claim that there was a false misrepresentation concerning the "marketability and insurability" of the Property. Nonetheless, Plaintiffs primarily assert fraud by omission. Specifically, Plaintiffs contend that Defendants misrepresented the status of the Property **by failing to disclose** there were previous foreclosures on the Property that did not result in a consummated sale, that there was an easement and tenancy, that it was registered with the D.C. Surveyor's Office as a record lot, instead of a survey lot, and that the value of the home was less than that of the land. Complaint ¶ 59. These claims fail because Wells Fargo, G.E., and Trustee had no duty to disclose anything. "There is . . . no question that mere silence does not constitute fraud unless there is a duty to speak." Kapiloff v. Abington Plaza Corp., 59 A.2d 516, 517 (D.C. 1948). District of Columbia law clearly states that a seller has no duty with respect to a prospective purchaser at a foreclosure sale. The District of Columbia Court of Appeals has held that:

> the doctrine of *caveat emptor* applies to foreclosure sales because a trustee make no warranty of title and is generally subject to no duty to investigate or describe outstanding liens or encumbrances. … The purchaser must therefore make his own investigation and determine what liens or encumbrances may exist against the property prior to turning over his deposit.

Stuart v. Am. Sec. Bank, 494 A.2d 1333, 1338 (D.C. 1985).

---

[3]     In order "to prove fraud, a plaintiff must show by clear and convincing evidence that there is a false representation of material fact which is knowingly made with the intent to deceive and action is taken in reliance upon the misrepresentation." Pyne v. Jamaica Nutrition Holdings Ltd., 497 A.2d 118, 131 (D.C. 1985).

Since none of the Defendants had any duty to discuss or disclose any fact in relation to the Property's title, their failure to do so cannot constitute fraud.

Plaintiffs also allege that Draper & Goldberg, as trustee for Wells Fargo and G.E. "acted deceptively and fraudulently by advertising the Subject Property as 'valuable property.'" Complaint ¶ 60. Characterizing the property as "valuable" is at most an opinion which is not actionable. "Opinions . . . do not constitute representations of material fact upon which a plaintiff successfully may place dispositive reliance." Howard v. Riggs Nat'l Bank, 432 A.2d 701, 706 (D.C. 1981); see also Johnson v. Maryland Trust Co., 6 A.2d 383, 386 (Md. 1939) ("Misrepresentations . . . must relate to facts or matters of fact, and not mere matters of expectation or opinion. . . . [R]eference to the value of … [property] held by the trustee, cannot be construed other than mere opinion or estimate of value");[4] Saxby v. Southern Land Co., 63 S.E. 423, 424 (Va. 1909) ("[t]he mere expression of an opinion, however strong and positive the language may be, is no fraud;" the statements as to the value were "were trade talk . . . with respect to matters of an essentially uncertain nature"). Moreover, since others bid substantial amounts, the Property must have been valuable.

Finally, Plaintiffs allege that Defendants acted fraudulently by allowing the owners of the adjacent property to participate in the auction of the Property. Complaint ¶ 62. But Defendants have no authority to bar anyone from bidding at an auction. Moreover, Plaintiffs cannot explain how allowing such bidding could be "fraudulent" in the absence of an affirmative representation or the duty to disclose anything.

---

[4] "District of Columbia derives its common law from [Maryland] and . . . District of Columbia courts have in the past looked to Maryland law for guidance." Conesco Indus., Ltd. v. Conforti and Eisele, Inc., 627 F.2d 312, 315-16 (D.C. Cir. 1980).

### B.     Wells Fargo and G.E. Did Not Engage in Misrepresentation.

In Count II, Plaintiffs allege that Wells Fargo, G.E., and the other Defendants are liable for misrepresentation because they sold the Property with knowledge that they could not provide "insurable title." Complaint ¶ 64. As discussed above, Wells Fargo, G.E., and the other Defendants did not make any affirmative representations as to anything, much less the insurability of the Property's title. The Memorandum of Sale and the advertisement state that the sale is "as is." This means that the seller is making no representations. Indeed, if anything, the Memorandum of Sale suggests that title might not be insurable in that it allowed for the possibility of a refund of Plaintiffs' deposit if Plaintiffs were unable to secure title insurance. See Complaint ¶¶ 12, 21; Ex. A; Ex. B ¶ 5. It is clear from the face of the documents attached to the Complaint that Defendants did not represent that title was in fact insurable. Thus, Defendants cannot be liable for misrepresentation in that regard.

In addition, as discussed below, Plaintiffs confuse "insurable title," i.e., the ability to obtain title insurance, with the "marketable title," i.e., the ability to demonstrate sufficient value to warrant a $500,000 mortgage loan. See Part C, infra. Even if Defendants had represented that title was insurable, Plaintiffs have failed to allege they could not obtain title insurance. As such, Plaintiffs have not adequately alleged that any such representation was false.[5]

---

[5] Furthermore, Plaintiffs could not have "reasonably relied" on any lack of disclosure since everything was a matter of public record. For instance, Plaintiffs acknowledge that foreclosure notices and the easement in question are filed in the D.C. land records. Complaint ¶¶ 49, 51-52. A claim for misrepresentation requires that "reliance" be "reasonable." In re U.S. Office Prods. Co. Sec. Litig., 251 F. Supp. 2d 58, 74 (D.D.C. 2003). Here, Plaintiffs' failure to check the public records as to the Property and reliance upon the alleged omissions of Defendants was unreasonable as a matter of law, particularly given the rule of caveat emptor in foreclosure sales. Kapiloff, 59 A.2d at 517 ("[t]he Act of Congress on which he relied as a ground of voiding the purchase was as readily available to him as it was to the vendor. Under these circumstances it cannot be said that the vendor practiced a fraud upon him").

### C. Wells Fargo and G.E. Did Not Breach a Contract with Plaintiffs.

In Count III, Plaintiffs claim that Wells Fargo, G.E., and the other Defendants' failure to refund the deposit constitutes a breach of contract. Plaintiffs contend that Defendants failed to refund them their earnest money deposit when the contract called for a refund. Complaint ¶¶ 66-67. But the Memorandum of Sale attached to the Complaint allows a refund only if Plaintiffs cannot obtain title insurance. Plaintiffs do not allege they satisfied this condition.[6]

Insurable title means that a title insurance company will insure title, not that a lender will grant financing. "Marketable title and insurable title are not generally synonymous." Kipahulu Inv. Co. v. Seltzer P'ship, 675 P.2d 778, 781 (Haw. Ct. App. 1983), cert. denied, 744 P.2d 781 (Haw. 1984) (citing R. Powell & P. Rohan, Powell on Real Property § 1044 (1982); Hebb v. Severson, 201 P.2d 156, 160 (Wash. 1948)). Accord, U.S. Bank v. Smith, No. 18875/02, 7 Misc.3d 1005(A), 801 N.Y.S.2d 243 (Table), 2005 WL 763059 (N.Y.Sup. Feb. 15, 2005) ("insurable title is not necessarily a marketable one"). "A marketable title is a title which is free from encumbrances and any reasonable doubt as to its validity, and such as a reasonably intelligent person, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of ordinary business prudence." Sinclair v. Weber, 104 A.2d 561, 565 (Md. 1954). "Accordingly a marketable title must be so far free from defects as to enable the purchaser not only to hold the land in peace but

---

[6] This Court may consider these documents in ruling on a motion to dismiss. E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997), aff'd, 254 F.3d 315 (D.C. Cir. 2000) ("[i]n determining whether a complaint fails to state a claim, [court] may consider . . . any documents either attached to or incorporated in the complaint"); Baker v. Henderson,150 F.Supp.2d 17, 19 n.1 (D.D.C. 2001) (same); Cortec Indus., Inc. v. Sum Holding L.P, 949 F.2d 42 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992) (holding that defendants may attach "papers [that] were integral to ... [plaintiffs'] complaint" to their motion to dismiss, even if plaintiffs did not attach these papers to their complaint).

also, if he wishes to sell it, to be reasonably sure that no flaw will appear to disturb its market value." Id. In contrast, warranting "insurable title" simply means that "the vendor [must] convey . . . such title as a designated title company will approve and insure." Hebb v. Severson, 201 P.2d at 160. Where vendor can deliver such title "the vendee is of course bound by the agreement and is not justified in refusing a title which conforms thereto merely because it is objectionable on other grounds." Id.

Plaintiffs do not allege that any title company refused to provide them with title insurance, or that no title company would insure title. Rather, Plaintiffs simply allege that lenders refused to make a loan because they did not believe the Property had sufficient value to secure a loan of $500,000.

Plaintiffs also contend that they did not agree to pay liquidated damages to Defendants for failure to consummate the sale. Complaint ¶ 68. But this contention is inconsistent with the face of the Memorandum of Sale. Paragraph 6 of the Memorandum of Sale expressly provides that:

> Settlement must be within 30 days of the sale date. Time is of the essence. If settlement does not occur within this time period, the deposit may be forfeit, and the trustees may avail themselves of all other legal or equitable rights against the defaulting purchaser.

The Court can and must disregard conclusory allegations that conflict with the face of the agreement. See Thompson v. Illinois Dept. of Professional Regulation, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim").

**D.      Wells Fargo and G.E. Did Not Wrongfully Convert Plaintiffs' Property.**

In Count IV, Plaintiffs claim that Wells Fargo, G.E., and the other Defendants wrongfully converted Plaintiffs' earnest money deposit. Complaint ¶ 69. Conversion "has generally been defined as any **unlawful** exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." Flocco v. State Farm Mut. Auto. Ins. Co., 752 A.2d 147, 158 (D.C. 2000) (internal quotations omitted; emphasis added). Since the contract at issue expressly permits the retention of the deposit, the retention of the deposit cannot be "unlawful."

**E.      Wells Fargo and G.E. Were Not Unjustly Enriched.**

In Count V, Plaintiffs argue that Wells Fargo's, G.E.'s, and the other Defendants' knowledge that the Property had title defects would have made Defendants aware that Plaintiffs would not be able to secure adequate financing. Complaint ¶ 70. Therefore, they allege, accepting Plaintiffs' deposit unjustly enriched Defendants. Complaint ¶ 71. Nonetheless, "there can be no claim for unjust enrichment when an express contract exists between the parties . . . ." Miranda v. Contreras, 754 A.2d 277, 283 (D.C. 2000) quoting Schiff v. American Ass'n of Retired Persons, 697 A.2d 1193, 1194 & n.2 (D.C. 1997). Since Plaintiffs clearly allege an express contract between the parties, i.e., the Memorandum of Sale attached to Plaintiffs' Complaint, they cannot state a claim for unjust enrichment.

**F.      Wells Fargo and G.E. Did Not Engage in a Civil Conspiracy.**

In Count VI, Plaintiffs claim that Wells Fargo, G.E., and the other Defendants conspired to deprive Plaintiffs of their deposit. Complaint ¶¶ 72-73. Under District of Columbia law, a plaintiff may allege civil conspiracy, by demonstrating "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act

performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. 2000) (internal citation omitted). There is no independent tort action for civil conspiracy. See Lamont v. Haig, 590 F.2d 1124, 1136 n.73 (1978). Aside from the fact that Plaintiffs have failed to allege any agreement between Defendants, they have also failed to allege an underlying unlawful act, as discussed above. Elliott v. Healthcare Corp., 629 A.2d 6, 10 (D.C. 1993) (internal citation omitted). Plaintiffs' claim of conspiracy therefore fails.

### G. **Plaintiffs Cannot Plead Equitable Estoppel.**

In Count VII, Plaintiffs plead equitable estoppel. Complaint ¶¶ 77-79. "A party raising equitable estoppel must show that he changed his position prejudicially in reasonable reliance on a false representation or concealment of material fact which the party to be estopped made with knowledge of the true facts and intent to induce the other to act." Nolan v. Nolan, 568 A.2d 479, 483 (D.C. 1990).

Plaintiffs claim that Defendants failed to disclose the title issues present in the public records and described the Property as "valuable." As discussed throughout, neither of these allegations is actionable. Defendants made no false representations. The relevant facts were all a matter of public record, and easily within Plaintiffs' reach. Plaintiffs could not have reasonably relied on any representations or omissions. Thus, Plaintiffs have failed to set forth a claim for equitable estoppel.

**H.      Wells Fargo and G.E. Did Not Violate the D.C. Consumer Statute.**

Finally, in Count VIII, Plaintiffs allege violations of the D.C. Consumer Protection Procedures Act (the "Act") by Wells Fargo, G.E., and the other Defendants for making misrepresentations of fact contrary to §§ 28-3904(e) and (f) of the Act and for making an "unconscionable" contract contrary to § 28-3904(r) of the Act.  Complaint ¶¶ 81-85.

As a general proposition, a claim for misrepresentation of fact under §§ 28-3904(e) and (f) requires the same elements of proof as common law fraud and misrepresentation because "statutes in derogation of common law are to be construed strictly . . . and . . . no statute is to be construed as altering the common law, farther than its words import." Osbourne v. Capital City Mortgage Corp., 727 A.2d 332, 325 (D.C. 1999) (internal citations omitted).  Thus, for example, a claim under these sections "'requires the same burden of proof as does a common law claim for such misrepresentation -- the clear and convincing standard.'" Bynum v. Equitable Mortgage Group, 2005 WL 818619, *18 (D.D.C. April 7, 2005) (quoting Osbourne, 727 A.2d at 325). Since the language of §§ 28-3904(e) and (f) does not reveal an intention to depart from the common law rule requiring a duty to disclose, a violation of these sections, in the case of an omission, similarly requires proof of a duty to disclose.  Here, Wells Fargo and G.E. had no duty to disclose anything.  In addition, consumer fraud per § 28-3904(e) and (f) requires a practice that would "mislead a reasonable customer." Alicke v. MCI Commcn's Corp., 111 F.3d 909, 912 (D.C. Cir. 1997).  Again, as discussed above, no reasonable consumer could have reasonably been misled because no Defendant made any affirmative representations and the facts as to which Plaintiffs complain were of public record.

Likewise, Plaintiffs have failed to allege an unconscionable contract in violation of § 28-3904(r).  Plaintiffs presumably argue that forfeiture of the $30,000 deposit is unconscionable.

Nonetheless, in Craven v. Elmo, 442 A.2d 526, 528 (D.C. 1982), the District of Columbia Court of Appeals upheld the forfeiture of $2,000 on a $18,500 sales contract, i.e., 11%, when the purchasers of property at a foreclosure sale were unable to consummate the sale. In that case, the Court of Appeals stated:

> it is plain from the language of the contract itself, as well as the ratification and confirmation of the contract of sale by the court on May 20, 1977, that the property was intended to be sold "as is," thereby relieving appellant of any contractual obligation to remedy the housing code violations which existed before settlement. Bray [the purchaser] was required to proceed to settlement regardless of any housing code violations or to forfeit his $2,000 deposit. We hold that the typewritten clause of the contract which expressly provided that the property was to be sold "as is" was controlling and that Bray breached the contract of sale by refusing to go to settlement until appellant remedied any alleged housing code violations. Consequently, appellant was entitled to have the order of sale vacated and to the forfeiture of Bray's $2,000 deposit.

Id. See also Barnette v. Sayers, 289 F. 567, 570 (D.C. Cir. 1923) (upholding the forfeiture of $500 for a $12,000 contract, i.e., 4%, holding that "the amount claimed to be liquidated damages is [not] disproportionate to the entire consideration of the contract")

Here, the liquidated damages provided for in the Memorandum of Sales is not unconscionable. The amount of $30,000 is only 6% of the $500,000 purchase price -- half the percentage of the sales contract which the Craven court upheld. The liquidated damages here therefore bear a reasonable relationship to the entire consideration. So too, $30,000 bears a reasonable relationship to the loss incurred by Trustee. Because of Plaintiffs' failure to consummate the sale, Trustee is required to bear the expense of readvertising and renoticing the sale, as well as the cost of any delay in ultimately obtaining the value of the Property. As such, the $30,000 liquidated damages provision is hardly unconscionable.

## III.  **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint pursuant to Rule 12(b)(6).

                        Respectfully submitted,

                           /s/ Maha Jweied
                        Gary C. Tepper (D.C. Bar No. 348698)
                        Maha Jweied (D.C. Bar No. 490852)
                        ARENT FOX PLLC
                        1050 Connecticut Avenue, N.W.
                        Washington, DC  20036-5339
                        (202) 857-6000

                        Attorneys for Defendants
                        Wells Fargo Bank, N.A. (for itself and as successor
                        to Wells Fargo Home Mortgage, Inc.) and G.E.
November 17, 2005              Capital Mortgage Services, Inc.