

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN CADET, et al.                    )
                                      )
      Plaintiffs                     )
                                      )
                                      )      Civil Action No. 05-2105
v.                                    )            *TFH*
                                      )
                                      )
                                      )
DRAPER & GOLDBERG, PLLC, et al        )
                                      )
      Defendants                     )
─────────────────────────────────    )

## PLAINTIFFS' OPPOSITION TO DEFENDANT  L. DARREN GOLDBERG, SUBSTITUTE TRUSTEE'S MOTION TO DISMISS

      Comes now the plaintiffs John Cadet and Yves Cadet, pro se, and humbly moves

this Court to deny the said Defendant's Motion to Dismiss.  In support, the plaintiffs

respectfully set forth the accompanying memorandum of points and authorities.

Respectfully submitted,

John Cadet, Pro Se
Yves Cadet, Pro Se
3816 Fourth Street, NW
Washington, D.C. 20011
(202) 722-6272
(202) 390-3744

RECEIVED

DEC 2 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN CADET, et al. | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| | )     **Civil Action No. 05-2105** |
| **v.** | ) |
| | ) |
| | ) |
| **DRAPER & GOLDBERG, PLLC, et al** | ) |
| | ) |
| **Defendants** | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT L. DARREN GOLDBERG, SUBSTITUTE TRUSTEE'S MOTION TO DISMISS

Comes now the Plaintiffs, Pro Se, and pursuant to District of Columbia Rule12 (b)(6) and Rule 56, respectfully request this Honorable Court to deny said motion to dismiss. In support thereof the Plaintiff states as follows:

I.    **Introduction**

This matter comes before the Court based upon John and Yves Cadets' (hereinafter " the Plaintiffs") suit against Defendants L. Darren Goldberg, the Substitute Trustee as Seller (hereinafter "the Substitute Trustee") and Alex Cooper Auctioneers, Inc. (hereinafter " Alex Cooper"), a Maryland corporation registered and authorized to do business in the District of Columbia. The real property which this action concerns is known as 2948 Albermarle Street, N.W., Washington, D.C. 20008 (hereinafter " the Subject Property"). On June 10, 2004, the Substitute Trustee filed a notice of Foreclosure regarding the Subject Property and said notice was recorded among the land records.

Pursuant to said notice and with intent to sell the Subject Property, the Substitute Trustee

hired Alex Cooper, a company with which it had a long-standing business relationship, to

conduct an auction. On July 15, 2004, the Subject Property was sold at auction to the

Plaintiff for the sum of $500,000 against which the Plaintiffs tendered a deposit of

$30,000. As the successful bidder, the Plaintiffs executed a Memorandum of Sale

whereby the Plaintiffs agreed to the terms of the sale listed in the advertisement and in

the Memorandum of Sale. The relevant terms were that the Plaintiffs would settle on the

Subject Property within 30 days or risk forfeiture of their deposit; that the Subject

Property was being sold "as is" subject to all easements, liens, covenants and restrictions

of record; and that the Plaintiffs deposit would be refunded if the Substitute Trustee could

not convey insurable title. Subsequently, the Substitute Trustee was unable to convey

insurable title due to defects related to the Subject Property, but elected not to return

Plaintiffs deposit. Unbeknownst to Plaintiffs the Subject Property had been the subject of

previous auctions that had not been consummated for the same or similar reasons, that the

Substitute Trustee and Alex Cooper had been involved in or had knowledge of the

previous auctions, and had not disclosed this information. As a result of the above, the

Plaintiffs filed this claim involving causes of action for fraud, misrepresentation, breach

of contract, wrongful conversion, unjust enrichment, civil conspiracy, equitable estoppel

and violation of the District of Columbia Consumer Protection Act (hereinafter "CPPA").

Defendant L. Darren Goldberg, Substitute Trustee now comes and seeks to have all

causes of actions dismissed.

## II.    **Legal Standard**

Dismissal of a complaint under Civil Rule 12 (b)(6) for failure to state a claim upon which relief can be granted is only proper where it appears beyond doubt that the plaintiff can prove no fact that would support the claim. See *Schiff v. American Association of Retired Persons*, App. D.C., 697 A.2d 1193 (1997).

A complaint is deemed sufficient so long as it fairly puts defendant on notice of the claim against him. According, liberal rules of pleading normally protect a plaintiff from dismissal at the pleading stage when the complaint can be said to state a claim if all inferences are drawn in the plaintiff's favor. *Scott v. District of Columbia*, App D.C., 493 A.2d 319 (1988); *Duncan v. Children's National Medical Centre*, App. D.C., 702 A.2d 207 (1997); *Superior Court Civil Rules of Procedure Rule 8*.

A complaint must (emphasis added) be construed favorably to the plaintiff and its allegations taken as true for the purpose of a motion to dismiss pursuant to Civil Rule 12(b)(6). *Atkins v. Industrial Tele. Assn.*, 660 A.2d 885 (1995); *Fred Ezra Co. v. Pedas*, 682 A.2d 173 (1996).

The complaint should not be dismissed because the plaintiff may fail or because the court doubts that the plaintiff will prevail in the action. *McBryde v. Amoco Oil Co.*, 404 A.2d 200 (1979).

## III.    **Argument**

### A.                **Agency**

Prior to addressing the arguments concerning the cause of action put forth in L.Darren Goldberg's  Motion to Dismiss, it is necessary to address the nature of the relationship existing between L. Darren Goldberg, Substitute Trustee and co-defendants

Alex Cooper, et al. Resolution of the issue of the relationship between Substitute Trustee and Alex Cooper, et al is crucial to determining a proper outcome.

Plaintiffs allege that an agency relationship existed between the Substitute Trustee, as the principal and Alex Cooper, as the agent. Alex Cooper alleges that no such relationship existed. It is interesting to note that while the agency relationship is strenuously disavowed by Alex Cooper, neither the Substitute Trustee nor Alex Cooper attempts to define the nature of the relationship existing between the parties. Both of the above named defendants know that to acknowledge the nature of the relationship brings legal duties, responsibilities, and obligations.

Agency is the fiduciary relation that results from the manifestation of consent by one person to the other that the other shall act on his behalf and subject to his control, and consent by the other so to act. The one for whom action is to be taken is the principal. The one who is to act is the agent. *Restatement of the Law, Second, Agency § 1.* In the instant case, the Substitute Trustee is the principal. It directed Alex Cooper to run the advertisement, conduct the auction, prepare the memorandum of purchase, and undertake the collection of the high bidder's deposit. Alex Cooper did each of these acts at the direction and on behalf of the Substitute Trustee, and thereby evidenced its agent status of control by the principal.

It is clear from the above that the agency relationship existed. Its existence does not depend upon the intent of the parties to create it or their belief that they have or have not done so. To constitute the agency, there must be an agreement between the parties; if the agreement results in the factual relation between them to which attaches the legal

5

consequence of agency, an agency exist despite the fact that the parties did not call it an

agency, and did not intend the legal consequences of an agency to follow.

When there is doubt about the nature of the relationship between the parties, the

courts have held it is their function to ascertain the factual relation of the parties to one

another. The agency relation result if, but only if, there is and understanding between the

parties which creates a fiduciary relation in which the fiduciary is subject to the direction

of the one on whose account it acts. *Veazie v. Williams,* 49 U.S. 134; 121 L. Ed. 1018.

Thus, it has long been held and well understood, that the attorney-at-law, the broker, the

factor, the auctioneer (emphasis added), and other persons similarly employed either for a

single transaction or a series of transaction, are agents, although as to their physical

activities they are independent contractors. *United States v. Ferguson,* 158 F. Supp. 814,

817 (D.C. Ed. Ark., W.D. 1958).

As the complaint and the record clearly establish, L. Darren Goldberg, the

Substitute Trustee, Alex Cooper Auctioneer, and other party defendants have an agency

relationship with all its attendant legal consequences.  Thus, L. Darren Goldberg, the

Substitute Trustee's motion to dismiss must be denied since there are factual issues

proven which could and would support the claim.

### B.                        Count I – Fraud

The complainant allege that L. Darren Goldberg, the Substitute Trustee and other

named defendants, individually or in concert, committed fraud by concealing facts that

were within their knowledge which affected the value, the marketability, and the

insurability of the Subject Property, namely that the Subject Property had been the

subject of previous foreclosures; that prior foreclosure sales were not consummated; that

tenants were in the Subject Property; that the Subject Property is a record lot and not a survey lot;  that the value of the structure is less valuable than the land; that the Substitute Trustee and other named defendants  had been party to all or almost all of the previous foreclosures; and that the Substitute Trustee and the other named defendants had no intention to sale the subject property.

In alleging fraud, the complaint must be pleaded with particularity, as required by Superior Court Civil Rule 9((b). This particularity means that in pleading fraud, the pleader must show five elements: (1) a false representation, (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. *Bennett V. Kiggins,* 377 A.2d 57, 59 (D.C. 1977,*cert.* denied, 434 U.S. 1034, 54 L.Ed. 2d 782, 98 S. Ct. 768 (1978). The District of Columbia Court of Appeals in *D'Ambrosio v. The Colonade Council of Unit Owners,* 717 A.2d 356  (D.C. 1998) in assessing the impact of Civil Rule 9(b) states "…. the court must not overlook Super. Ct. Civ. R. 8(a)(2), which calls for a plaintiff to file only " a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Mitchell Energy Corp. v. Martin,* 616 F. Supp.924, 927 (S.D. Tex. 1985) (" the relationship between [Rules 8(a (and 9(b) is complementary…. [The rules] must be read in that fashion, avoiding an exclusive focusing on the requirements of one or the other." ) (quoting *Brown v. Joiner Int'l,* 523 F. Supp, 333, 335-36 ( S.D. Ga. 1981). According to the United States Court of Appeals for the District of Columbia Circuit,

> reading these two provisions in conjunction 'normally … means that the pleader
> must state the time, place and content of the false misrepresentation [sic], the fact
> misrepresented and what was retained or given up as a consequence of the fraud'

*Kowal v. MCI Communication Corp.,* 305 U.S. App. D.C. 60, 67, 16 F.3d 1271, 1278 (1994) (quoting United *States v. Cannon,* 206 U.S. App. D.C. 405, 417, 42 F2d 1373, 1385 (1981), *cert. denied,* 455 U.S. 999, 71 L. Ed. 865, 102 S. Ct. 1630 (1981). "

Reading this standard into the current pleadings the pleader did allege time as "prior to the auction",; the place, the auction advertisement; the content of the misrepresentation was the statement of "VALUABLE property" when the party defendants knew or should have known of latent defects which impacted the marketability and insurability of the property; and what the plaintiff "gave up" was the opportunity not to bid at the auction. It thus appears obvious that the pleadings are sufficient to establish a cause of action in fraud.

The Substitute Trustee places much emphasis on the Merriam-Webster Online Dictionary 's definition of "valuable" as " having monetary value ' or "worth a good price" as indicative of the term "VALUABLE property" not being a false representation. It is submitted that this should not be the standard by which the false representation should be measured since all real estate has a monetary value; rather the statement should be read in the context of the knowledge and information being possessed by the defendants, and their intent and impression attempting to be conveyed in utilizing the terminology. This standard is articulated in *Borzillo v. Thompson,* 57 A.2d 195, 1948 D.C. App. in which the D.C. Court of Appeals stated: " A statement in a business transaction, while stating the truth as far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation. Also a statement containing a half-truth may be misleading as a statement wholly false, and a statement that contains only those matters which are

favorable and omits all reference to those which are unfavorable is as much a false representation as if all the facts stated were untrue. Though there may be no duty to speak as to the matter, if he undertakes to do so, either voluntarily or in response to inquires, he is bound not only to state truly what he tells, but also not to suppress or conceal any fact within his knowledge which materially qualifies those stated. If he speaks at all, he must make a full and fair disclosure. A duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing, or to tell the whole truth. A statement literally true is actionable if made to create an impression substantially false." See also *Tucker v, Beacley,* 57 A.2d 191, 1948 D.C. App.; *Park v, Sandwich Chef,* 651 A.2d 798, 1994 D.C. App.; *Wicks v. Westcott,* 59 MD 270 (1883).

Hence, the Substitute Trustee and other named party defendants in using the phrase "VALUABLE property" in light of their previous dealings with the property foreclosures and auctions were under a duty to qualify the phrase or be subject to accusations of making false and misleading statements. This is given clarity *in Wicks v. Westcott, supra, a* case involving a challenge by a judgment creditor to the ratification of a sale. In that case, the charge was made that the trustee, by virtue of imprecise and misleading representations, had unduly depressed the apparent value of the subject property and had thereby failed to procure an adequate sale price. The Court of Appeals agreed that the trustee had indeed so failed and reversed the trial court's ratification of the sale. In doing so, the Court of Appeals did begin with the general statement from Wicks *at 277:*

> "As a general rule, we do not think it is the duty of the assignee or trustee, in selling property, upon which prior encumbrances rest, to

> ferret out the exact state of such liens, and ascertain how much, if any may be due upon them. The rule of caveat emptor excludes such rigid exaction of a trustee."

After making the general statement, however, *Wicks v. Westcott* turned in the very different direction of its ultimate holding, *at 277:*

> "[I]f he was not bound to inquire or make any statement respecting the amount of arrears, the trustee was bound, if he undertook to make any statement respecting it, to be sure that the statement he did make was, at least, approximately accurate, and not in anywise misleading."

> "Manifestly the bidders were entitled to all the information on the subject which he had, and when he gave notice of that judgment and mortgage, he ought to have stated all he knew about them. It was most important information to bidders, and how far that information, which would have helped bidders to form some better idea as to the sum they would have to pay in addition to what was bid, might have operated to induce more competition, it is impossible to tell. The unexplained statement of the fact of such liens was calculated to depress the sale."

Clearly *Wicks v. Westcott* supports the standard that L. Darren Goldberg, even as a trustee, owed the bidders here "all the information on the subject which he had" and that "he ought to have stated all he knew about it." This he most clearly did not do, and thus misrepresented the value of the property

Admittedly, if the Substitute Trustee and other named party defendants had come upon this information without any prior dealings with the subject property there would have been no duty to disclose, however, because of the previous dealings and the unique relationship with the property, the Substitute Trustee, once he choose to quantify the property's value, had a duty to fully disclose all information in his possession that related to the quantification. Any doubt that the Substitute Trustee was seeking to quantify the value of the property is most apparent if the advertisements for other

foreclosed properties handled by the Substitute Trustee are reviewed. (See attached exhibit)

In other advertisements the language used in describing the property being auctioned refrains from the use of the term "VALUABLE" and rather describes that being auctioned as "real property", or "property secured by", however, in this area of upper northwest with property values of upward of one to two million dollars, the Substitute Trustee elected to use the descriptive modifier of valuable, and further chose to capitalize the modifier in an attempt to leave the impression that the subject property was of similar value.   The Substitute Trustee and the other party defendant knew that this representation as to value was misleading. Thus, once they chose to quantify the property value they were under an obligation to tell the whole truth.

In addition, the Substitute Trustee asserts that the term "VALUABLE property" in the advertisement was not a material fact upon which the bidders placed reliance.  Rather, the Substitute Trustee asserts the Plaintiff's view of suitability for their purposes because of the location, the good schools in the area, the nearby shops and the fact that it was five (5) minutes away and accessible to many areas visited and where they shopped, as indicative of the property's value to the plaintiff. These admissions do not indicate the value of the property, but rather show why the Plaintiffs were interested in the property and would have been interested and remained interested without regard to its value.

The final circumstance that leads to the allegation of fraud is the fact that the adjacent property owner, a neighbor of the owner being foreclosed, and the tenant in possession were the only bidders besides the Plaintiffs. While it is true that there is nothing prohibiting owners of adjacent property and tenants in possession from bidding

on the auctioned property, their presence under the circumstance raises serious questions. This is especially true in light of the previous attempts to auction this property of which they undoubtedly were aware. It would appear that if they were truly interested in the property, it would have been possible for them to make arrangements to cure the debtor's default, and assume the mortgage at a substantially lower cost rather than run the risk of a substantial price-run up that an auction would entail. In addition, the fact of there being only three bidders, and only one, the plaintiffs, being a stranger to the transaction, made it very possible for the other two to be schrills or by-bidder who could raise the bids, but be insulated from having to act, if by chance they were the high bidder. This is very possible in a situation where as here there were only three bidders and a single parcel offered for auction. See *Keys v. Keats,* 62 App D.C. 363 (1933); *Osborn v, Apperson Lodge F & A M,* 213 Ky. 533, 281 SW 500, 27 ALR 87.

As the complaint has plead fraud with the necessary specificity and the record has raised substantial factual issues which if construed in a light most favorable to the plaintiff would withstand a motion to dismiss, the defendant's motion to dismiss Count One must be denied.

### B.    Count II – Misrepresentation

The misrepresentation charge is grounded in the false or fraudulent statement contained within the Memorandum of Sales which makes purchaser's sole remedy the return of deposit if the Substitute Trustee can not convey insurable title? The Substitute Trustee within the body of its document then sought to provide examples of the type of occurrences that would result in an inability to convey insurable title. Both of the examples cited were indicative of some action by the previous owner that would prevent

12

the conveying of insurable title. By citing these examples and using the language of "including but not limited to", the Substitute Trustee represented that only some action on the part of the previous owner would prevent conveyance of insurable title, and that no defect on or of the property was applicable to insurability of title. This representation contained within the body of the contract was a misrepresentation of a material fact that could and would effect Plaintiffs' remedies. In making this representation, the Substitute Trustee knew that the property was neither marketable nor insurable as to title. In this instance, given the legal training of the Substitute Trustee, it must be presumed that the representation was not innocently made, but rather was made with reckless disregard of its truth, and because of Plaintiffs' reliance, damage results, the Substitute Trustee should be held liable. *Darnell v. Darnell*, 200F2d 747, 748(D.C. Cir. 1952)(quoting *Browning v, National Capital Bank,* 13 App. D.C. 1, 14-14 (D.C. Cir. 1898))

Upon the failure of the Substitute Trustee to convey insurable title or have the ability to convey insurable title -- not by some act of the previous owner, but rather because of defects or problems related to the property -- he elected to keep the deposit in contrivance of the representation made within the body of the contract. This action by the Substitute Trustee made his utterance of a remedy false, and resulted in the forfeiture of Plaintiffs' deposit.   Therefore, Count II states a claim upon which relief can be granted and L. Dareen Goldberg's motion to dismiss must be denied.

## C.    Count III - Breach of Contract

The breach of contract claim flows out of the fact that L. Darren Goldberg and the other defendants were not able to fulfill their contractual obligation, namely failing to return Plaintiffs' deposit when the Substitute Trustee could not convey insurable title.

The question of whether or not there was a breach of contract turns on the question of whether the substitute Trustee could deliver insurable title. The determination of insurable title, in large part, is a question tied up in the inquiry as to whether the title is 'marketable". The essence of a purchase of real property is whether the purchaser can enjoy his property free and clear of disturbances can encumber it, borrow against it, and eventually sale it. The freer the property is against claims, encumbrances, etc., the more marketable. The entire purpose of title insurance is to make sure that once marketable property is found the purchaser can be fairly insured that the property will remain marketable and he is protected against the entire world as to any claims against the property. It becomes obvious that what is always being bargained for is marketable title to be conveyed, and insurable title is only an inducement for the belief that the title is marketable.

In this jurisdiction, Courts such as that in *Zulver Realty Co. v. Synder*, 62 A2d 276, 191 MD 374 (1948) have defined "marketable title" as:

> "A marketable title is a title free from encumbrances and any reasonable doubt as to its validity. No specific rule can be laid down as to what doubts will be sufficient to make a title unmarketable. The general rule is that the purchaser is entitled to a deed, which will enable him to hold the land in peace, and, if he wishes to sell it, to be reasonably certain that no flaw will appear to disturb its market value. However, a title, in order to be marketable, need not be free from every conceivable technical criticism. It is not every possibility of defect or even threat of suit that will be sufficient to make a title unmarketable. Objections based on frivolous and captious niceties are not sufficient. In other words, a marketable title is one which a reasonable purchaser, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of that prudence which business men ordinarily use in such transactions." *Id. at 286.*

14

In the District of Columbia, as in most other jurisdictions, a marketable title is one free from encumbrances and from any reasonable doubt as to its validity. The title to the property in this case was subject to various encumbrances such as a easement, a tenancy, its status as a tax lot and not a survey lot thereby rendering it not subject to improvement, and the fact that the land value was greater than the building situated thereon. All of the above certainly raised doubts as to the marketability of the title, and the ability to deliver "reasonably" insurable title.

The ultimate test of whether the property could be conveyed with "marketable title" is how the property faired in the marketplace. The results of this test is especially indicative in the District of Columbia of whether the title was marketable. This particular market has been "superheated' for the last several years had have experienced equity growth rates averaging between 15 to 20 percent per annum.

In this market, the Plaintiffs, despite being pre-approved for loans sufficient to purchase the subject property, have been unable to secure financing. This inability had manifested itself over 4 independent lenders, two of which were looking at the property transaction at arms-length, and two of which were either direct referrals from the defendants or the noteholder of record. It is again stressed that all of the foregoing mentioned lenders had pre-approved the Plaintiffs for upward of $450,000 to $500,000. In one instance, one of the arms-length lenders informed the Plaintiffs that the subject property "cannot receive financing mainly due to the fact that it has been grossly inadequate and misrepresented". All of the denials of financing related back to the property and reference the marketability or the lack thereof of the property title.

While all of the financing denials were premised on the nonmarketability of the title, the one that is most disturbing is that of the current noteholder, Wells Fargo Bank, a party defendant, having previously appraised the property and found it sufficient to extend a loan to parties now in default, would now turn around and decline to extend a loan on the property based upon nonmarketability and cite as grounds for the denial "value or type of collateral not sufficient" and "unable to verify residence". This denial raises serious concerns relative to the intent of the party defendants as to their desire to dispose of the property and/or deal with the Plaintiffs fairly and in a less than fraudulent manner. This action raises the specter of the party defendant noteholder intentionally attempting to place the Plaintiffs in default.

This inability of the Plaintiffs to obtain financing based on the nonmarketability of the auctioned property is certainly indicative of the Substitute Trustee not being able to convey insurable title.  The test for determining whether an insurer in an arms-length transaction would extend title insurance is similar to that governing the exercise of the financier and the purchaser of real property.  The standard is whether a reasonable person who is well informed as to the facts and their legal bearings, and ready and willing to perform under a contract, would be willing to accept the risk in the exercise of that prudence which business men ordinarily use in such transactions. In the above situation, the lenders resoundedly declined and it is submitted that a reasonably prudent title insurer operating at arms-length, or even in the orbit of the Substitute Trustee, would decline the exposure attendant with this level of nonmarketability.

Given the problems with respect to the subject property, any title insurer in extending insurance would have been operating against its best interest. The insurer would be

16

buying into an unanticipated lawsuit. At the very least, the insurer might have been afflicted with legal expenses, with uncertainty, with anxiety, with inconvenience, and with a general nuisance that could easily be avoided by the exercise of prudence. It is easy to see that a reasonable insurer would not extend title insurance under these circumstances. Applying this reasonableness standard, it becomes obvious that the Substitute Trustee could not convey insurable title. This failure amounts to a breach of contract.

Clearly, the complaint states a claim for relief upon which relief can be granted and L. Darren Goldberg's motion to dismiss must be denied.

### D.    Count IV – Wrongful Conversion

Count IV of the complaint alleges that L. Darren Goldberg wrongfully converted the Plaintiffs' deposit of $30,000.00 by failing to return the deposit. Conversion is the unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his right thereto. *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147,158 (D.C. 2000).

The agency relationship existing between Substitute Trustee and Alex Cooper renders the conversion of deposit money by the Substitute Trustee the same as if Alex Cooper converted it. This is true although Alex Cooper tendered Plaintiff's deposit to the Substitute Trustee. Alex Cooper stood in a fiduciary position to both the Plaintiff and the Substitute Trustee and upon the failure to deliver insurable title Alex Cooper as fiduciary was responsible for obtaining deposit from the Trustee in returning it to the Plaintiffs. Again, because of the agency relationship, if the principal is the wrongdoer, the agent is the wrongdoer also. *United States v. Ferguson supra.* Hence, the allegation of

conversion either by the principal or the agent states a cause of action upon which relief can be granted, thus the motion by L. Darren Goldberg must be denied.

### E.    Count V – Unjust Enrichment

Unjust enrichment occurs when (1) the plaintiff confers a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust. *News World Communications, Inc. v. Thomsen,* 878 A.2d 1218, 1222 (D.C.2005). The forfeiture of Plaintiffs' deposit under the circumstances mentioned herein constitutes unjust enrichment. The unjust enrichment is especially pronounced because Alex Cooper's fee came out of Plaintiffs' deposit and due to the inability to deliver insurable title resulting from latent defects, defects which Alex Cooper knew or should have known existed because of his prior dealings with this auctioned property, the benefit was conferred and retained by Alex Cooper. As the benefit conferred inured to the party defendants and the Substitute Trustee, L. Darren Goldberg, as a moving party, is not entitled to a dismissal of this claim.

### F.    Count VI – Civil Conspiracy

The allegations of civil conspiracy revolve around a course of conduct between L. Darren Goldberg and other defendants so as to conceal material facts from the Plaintiff's: to falsely advertise the Subject Property "Valuable Property" when they knew or should have known that defects seriously affected its market ability and insurability: and allowed an adjacent property owner and the tenant in possession of the Subject Property to run up the bid. *Paul v. Howard University,* 754 A.2d 297, 310 (D.C. 2000) held that to establish a *prima facia* case of civil conspiracy, the Plaintiffs must prove (1) an agreement between

two or more persons, (2) to participate in an unlawful act, and (3) an injury caused by unlawful overt act performed by one of the parties to the agreement pursuant to, and furtherance of, the common scheme.

Civil conspiracy is not an independent tort, but only a "means for establishing liability for an underlying tort." Id at n. 27 (*quoting Griva v.Davidson*, 637 A.2d 830,848 (D.C. 1994)). The very nature of a conspiracy makes it extremely difficult to overtly establish a *prima facia* case. The conspiracy by its nature is secret, hence there is not likely to be concrete evidence of an agreement. In order to establish the first element of the agreement between two or more persons it would be necessary to look at the totality of the circumstances involved in each instance. In looking at the circumstances in this case we find (1) that the Substitute Trustee and other Defendants have auctioned the Subject Property numerous times and have never gone to culmination; (2) L. Darren Goldberg and other Defendants via the failure of auction culmination know or should have known of latent defects that rendered the property unmarketable; (3) that in the auction which is the subject of this case there were only two other bidders other than the Plaintiffs, the adjacent property owner and the tenant in possession bidding on the property; (4) that the adjacent property owner and the tenant in possession, if truly interested in the Subject Property, had more economically viable means of acquisition rather that the high risk, high cost auction avenue. That all these things came together does not prove an agreement but lends strong credence to a concerted effort on the part of all parties involved. Admittedly there is no direct evidence in the record of an actual agreement between the Substitute Trustee or other Party Defendants to perpetuate the fraud, but the nature of a conspiracy is such that more often than not the only type of

evidence available to prove the conspiracy is circumstantial evidence, such as indicated by the above. Such evidence will suffice to prove the conspiracy and render all conspirators jointly liable for the fraud and the resulting damages. See *Industrial Underwriters, Inc. v. Boyle,* 365 A.2d 779, 976 D.C. App.; *Higgs v. Higgs, 472 A.2d 875, 1984 D.C.App.*

Once past the hurdle of proving an agreement, the participation in an unlawful act or a lawful act in an unlawful manner, the rigging of the bid and the injury caused by the act, the forfeiture of the deposit and retention of the property are obviously in furtherance of the scheme. While there are no specific facts proving an agreement, the totality of the circumstances point to the Substitute Trustee and other Defendants acting concertedly to deprive Plaintiffs' of the property and their deposit. Construing the complaint in the light most favorable to the Plaintiffs means that L. Darren Goldberg's motion to dismiss must fail on this count as well.

### G.    Count VII – Equitable Estoppel

Count VII of the complaint asserts that L. Darren Goldberg and the other party defendants are estopped from asserting that the Plaintiffs' deposit was forfeited due to the concealment of material facts concerning the Property. To prevail on a claim of equitable estoppel, the plaintiff must prove "(I) conduct amounting to a false representation or concealment of material fact (2) made with actual or constructive notice knowledge of true facts, and (3) with the intention that another person act in reliance upon it; (4) the other person's lack of knowledge and of the means of knowledge concerning the truth of the representation, (5) and his reliance upon the misrepresentation, (6) causing him to act

so as to change his position prejudicially." *Goldberg. Marchesano, Kohlman, Inc. v. Old Republic Surety Co.,* 727 A.2d 858, 862 (D.C. 1999).

The Opposition to Defendant L. Darren Goldberg's Motion to Dismiss as to Section III A, B and C demonstrate that an agency relationship with the attendant legal consequences existed between the Substitute Trustee and other party defendants such that the knowledge of and the duty to disclose attaches to all party defendants once they spoke with respect to the Subject Property. Based on the foregoing, L. Darren Goldberg's Motion to Dismiss as to the claim of equitable estoppel must fail.

**H.    Count VIII - CPPA**

Count III of the complaint alleges that the Substitute Trustee violated § 28-3904(e) and (f) of the CPPA by failing to state material facts which tended to mislead the consumer. A claim for fraudulent misrepresentation under the CPPA "requires the same burden of proof as does a common law claim for such misrepresentation - the clear and convincing standard." *Bynum v. Equitable Mortgage Group,* 2005 U.S. Dist. LEXIS 6363 (D.D.C. 2005)(quoting *Osbourrne v. Capital City Mortgage Corp.,* 727 A.2d 322, 325 (D.C. 1999).

The agency relationship discussed in Section III A of the Opposition makes clear that the knowledge of and duty to disclose any information concerning qualifying information on the phrase "Valuable Property" attached once either the Substitute Trustee or Alex Cooper spoke. Premised upon the above, L. Darren Goldberg violated § 28-3904(e) and (f) of the CPPA by failing to state material facts and thereby misleading the consumer and this fraudulent misrepresentation is established in a clear and convincing manner. Under this Count, L. Darren Goldberg's motion must be denied.

### Conclusion

As all of the counts of Plaintiffs' complaint state a claim upon which relief

can be granted, Plaintiffs' respectfully request that as to Counts I - VIII of Defendant L.

Darren Goldberg's Motion to Dismiss, the Court order that they be denied.

Respectfully Submitted,

John Cadet, Pro Se
Yves Cadet, Pro Se

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _20th_ day of December 2005, a copy of

the foregoing was mailed, first class postage prepaid to the following:

Draper & Goldberg
803 Sycolina Road, Suite 301
Leesburg, VA 20175

Wells Fargo Home Mortgage, Inc.
Wells Fargo Bank, N.A.
G.E. Capital Mortgage Services, Inc.
4926 Wisconsin Ave., N.W.
Washington, D.C. 20015

Diane Rosenberg, Esq.
Mark D. Meyer, Esq.
Rosenberg & Associates, LLC
7910 Woodmont Avenue
Bethesda, MD 20914