UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| JOHN CADET ) <br> 3816 4TH Street, N.W. ) <br> Washington, D.C. 20011 ) <br>   ) <br>   and ) <br>   ) <br> YVES CADET ) <br> 3816 4th Street, N.W.   ) <br> Washington, D.C. 20011 ) <br>   ) <br>   v. ) <br>   ) <br> DRAPER & GOLBERG, PLLC ) <br> DAVID W. DRAPER, JR., ) <br> L. DARREN GOLDBERG, ) <br> 803 Sycolin Road, Suite 301 ) <br> Leesburg, Virginia 20175 ) <br>   ) <br>   ) <br>   and ) <br>   ) <br> WELLS FARGO HOME MORTGAGE, ) <br>      INC. ) <br> 1 Home Campus ) <br> MAC X2401-06T ) <br> Des Moines, IA 50328 ) <br>   ) <br>   and ) <br>   ) <br> WELLS FARGO BANK, N.A. ) <br> 420 Montgomery Street <br> San Francisco CA  94104 <br>   ) <br>   Defendants. ) <br>   ) <br> _____ ) | Civil Action No.: 1:05-CV-02105-PLF |

# 1st AMENDED COMPLAINT

## JURISDICTION

1. This matter was originally filed in D.C. Superior Court pursuant to D.C. Code Title 11, Section 921 and the Superior Court's General Equity Powers. This matter was removed to this Court pursuant to 28 U.S.C. §1332, and 28 U.S.C. § 1441(a).

## THE PARTIES

2. John and Yves Cadet are husband and wife and were the highest bidders at a public auction sale of the property that is the subject matter of this Complaint. The property is located in the District of Columbia and known as 2948 Albermarle Street, NW, Washington DC.

3. L. Darren Goldberg, a Defendant in this matter, is an attorney engaged in the practice of law with the law firm of Draper & Goldberg, and was the Substitute Trustee in connection with the sale of the Subject Property at the public action held on July 15, 2004.

4. David Draper, a Defendant in this matter, is an attorney engaged in the practice of law with the law firm of Draper & Goldberg, and was the Substitute Trustee in connection with the sale of the Subject Property.

5. Draper & Goldberg, PPLC, a Defendant in this matter, is a law firm, and was at all times relevant to this Complaint, a law firm engaged in the practice of law, with its place of business located at 803 Sycolin Road, Suite 301, Leesburg, Virginia 20175, and are licensed practitioners of law in the District of Columbia and attorneys for L. Darren Goldberg and David Draper, who have acted as Substitute Trustees in connection with the sale of the Subject Property, as attorneys for the Substitute Trustees, and as attorneys for Wells Fargo Home

–2–

Mortgage, Inc.

6.      Wells Fargo Bank, N.A. (hereinafter "Wells Fargo Bank"), a defendant in this matter, is an out of State corporate entity conducting banking and mortgage lending business.

7.  Defendant Wells Fargo Home Mortgage, Inc is either a separate division and or a wholly owned subsidiary of Defendant Wells Fargo Bank.

8.      GE Capital Mortgage Services, Inc. (hereinafter "GE"), a Defendant in this matter, is an out of state corporate entity conducting mortgage lending business in the District of Columbia. Defendant GE, is the legal and true holder of the Note and Deed of Trust on the Subject Property held by Wells Fargo Home Mortgage, as attorney-in-fact for Defendant GE.

## THE BACKGROUND

9.      On or about May 10, 2004, and June 12, 2004, Plaintiff John and Yves Cadet were going through the section of the Washington Times (hereinafter "Times") where properties for sale are advertised.  Plaintiff Yves Cadet came across an Advertisement ("Ad") for the sale of property located at 2948 Albemarle Street, N.W., Washington, D.C. 20008 (hereinafter "the Subject Property") at a public auction to be held on July 15, 2004.

10.     The Ad was placed by Alex Cooper on behalf of Defendant Draper & Goldberg, the Substitute Trustee.  According to the Ad, in pertinent part, there was to be a ASUBSTITUTE TRUSTEE'S SALE OF VALUABLE property known as 2948 Albemarle St., NW Washington, DC 20008, By virtue of a Deed of Trust, . . . at the request of the secured party thereby, the undersigned Substitute Trustee will offer to sell at public auction within the offices of Alex Cooper Aucts., Inc., on July 15, 2004 at 10:30 A.M., the land and premises situated in

the District of Columbia, and designated as and being Lot 822 in Square 2043, and more particularly described in said Deed of Trust.  TERMS OF SALE: A deposit of $30,000.00 will be required at the time of sale in cash or certified funds, except from secured party.   Property sold "AS IS" condition.  Subject to liens of record.  Conveyance by special warranty deed.  Settlement in 30 days.  If Sub. Trustee cannot convey insurable title, purchaser's sole remedy is return of deposit.  Additional sale terms announced at sale . . . ."  The undersigned Substitute Trustee named in the Ad was Defendant L. Darren Goldberg.

   11. After carefully examining the Ad in question, the Plaintiffs decided to attend the public auction and bid on the Subject Property because it appeared to them that said property would be suitable for their purposes.  They thought that the Subject Property would be suitable for their needs because of the location, the good schools in the area, the nearby shops, and the fact that it was five (5) minutes away and accessible to many areas that the Plaintiffs visited and where they stopped.

   12. Consequently, the Plaintiffs went to Market Street Mortgage, located in Burtonsville, Maryland, and applied for a pre-approved loan in order to purchase the Subject Property.  By letter dated July 7, 2004, the Plaintiffs were notified by Market Street Mortgage that they had been pre-approved for a loan in the amount of $526,000.00, subject to a satisfactory appraisal, termite and underwriting approval.

   13. On the morning of July 15, 2004, the Plaintiffs attended the auction held at the office of Alex Cooper.  There were only two other participants in attendance at the auction besides the Plaintiffs.  Plaintiff and the two other attendees offer bids until Plaintiffs final and winning bid of $500,000.00.

14.     Unbeknownst to the Plaintiffs, and based on knowledge, information and belief, the other participants, Ronald G. MacDonald and Marcia Wiss, are: (a) well known to the Defendants, (b) claim a leasehold interest in the property, (c) were named parties to prior foreclosure procedures, (d) owners of property adjacent to the Subject Property located at 3000 Albemarle Street, N.W., Washington, D.C. 20008, and (e) that they have a driveway easement in their favor existing on the Subject Property.

15.     Plaintiffs tendered an earnest money deposit over in the amount of Thirty Thousand ($30,000.00) Dollars in the form of a cashier's check.

16.     The Memorandum of Sale expressly provided, in pertinent part, that "If the trustee is unable to convey insurable title to this property for any reason, the sole remedy of the purchaser is the return of the deposit. Reasons for such inability include but are not limited to, the filing of a bankruptcy petition prior to the sale and reinstatement of the loan without the knowledge of the Trustee(s)."

17.  The Memorandum of Sale also expressly provided, in pertinent part, that "Settlement must be within 30 days of the sale date. Time is of the essence. If settlement does not occur within this time, the deposit may be forfeited, and the trustees may avail themselves of all other legal or equitable rights against the defaulting purchaser."

18.     Upon leaving the auction, the Plaintiffs provided a copy of the Memorandum of Sale to Market Street Mortgage in order to proceed with settlement within 30 days of the auction.

19.     On July 20, 2004, an Appraisal of the Subject Property was conducted by Market Street Mortgage. Shortly thereafter, in August 2004, Market Street Mortgage orally notified the

Plaintiffs that it would not be able to go forward with the loan for purchase of the Subject Property because of "Inadequate or unacceptable collateral" even though the Subject Property appraised for $500,000.00.

20. Acting in good faith, the Plaintiffs volunteered to Defendant Draper & Goldberg that they would go to another lender, Money Tree Funding, LLC, located at 342 Hungerford Drive, Rockville MD 20850 and they immediately followed through and applied for a loan with Money Tree Funding on or about August 1, 2004.  However, the same issue concerning the inadequacy/unacceptability of the Subject Property re-surfaced again.  The Plaintiffs were informed by Money Tree Funding on October 4, 2004 that Money Tree Funding could not make a loan for the purchase of the Subject Property due to the fact that said property "does not conform with its R-1-A zone" and Therefore, its value as "collateral for the proposed loan is very inadequate."  Money Tree Funding also stated that the Subject Property "cannot receive financing mainly due to the fact that it has been grossly inadequate and misrepresented." Defendant Draper & Goldberg were made aware of this loan rejection.

21. The Plaintiffs contacted Defendants Draper & Goldberg on or about August 15, 2004 and apprised them of Market Street Mortgage's refusal to extend a loan for the purchase of the Subject Property and the reason for its refusal.

22. On September 10, 2004, the Plaintiffs wrote a letter to Defendant Wells Fargo Bank informing said Defendant, as the holder of the mortgage note on the Subject Property, that they were the winning bidders at the public auction sale of the Subject Property on July 15, 2004, that they had tendered an earnest money deposit in the amount of $30,000.00, and that they were requesting a refund of their deposit.

22.     In their September 10th letter to Wells Fargo Bank, the Plaintiffs explained the problem that they were having in obtaining the financing to consummate the purchase of the Subject Property. D.C. 20008.

23.     By letter dated September 14, 2004, Defendant Draper & Goldberg informed the Plaintiffs, in pertinent part, as follows: "Pursuant to the terms of the Memorandum of Sale, <u>time is of the essence</u> in settling this transaction. Accordingly, you must tender the balance of the purchase price within ten (10) days from the date of this letter. Your failure to do so will result in a breach of the agreement. Upon such a default, the Substitute Trustees are authorized to, among other things, retain your earnest money Deposit as liquidated damages. **Please be advised that we must receive the full balance the Purchase Price on or before 09/27/04. If the required funds are not received by said date, your Deposit shall be deemed forfeited and the Substitute Trustees will arrange for the immediate resale of the premises.**"

24.     Upon receiving the September 14th letter from Defendant Draper & Goldberg, the Plaintiffs contacted Defendant Draper & Goldberg and requested an extension of time in order to protect their deposit and try to secure a loan to purchase the Subject Property.

25.     On or about September 20, 2004, after receiving the September 14, 2004 letter from Defendant Draper & Goldberg, the Plaintiffs telephoned them and asked for more time and said Defendants agreed to give them more time to try and secure the financing on the Subject Property. No specified time was given.

26.     In addition, the Plaintiffs, in their letter of September 27, 2004, informed Defendant Draper & Goldberg that they had applied for a loan with Defendant Wells Fargo Bank and had expected to know whether the loan was approved by September 23, 2004, but that when

they called Wells Fargo Bank on September 27, 2004, the same date of their letter, Wells Fargo told them that they needed another 48 hours to respond to them concerning the loan.

27. On September 29, 2004, Defendant Draper & Goldberg referred the Plaintiffs to another lender, namely, 1st American Mortgage, Inc., located at 8616 Westwood Center Drive, Vienna, Virginia 22182.

28. On or about September 29, 2004, the Plaintiffs applied with 1st American Mortgage for the loan on the Subject Property. 1st American Mortgage approved the Plaintiffs for a mortgage loan in the amount of at least of Five Hundred Thousand ($500,000.00) dollars on September 30, 2004.

29. However, on October 16, 2004, soon after 1st American Mortgage conducted its Appraisal of the Subject Property on the same date, the Loan Officer of 1st American Mortgage, Ramin Noori, (friend of Nevine Kamel at Draper & Goldberg) telephoned Plaintiff Yves Cadet and set up a three-way conversation between her, Nevine Kamel, and Plaintiff Yves Cadet. Ramin Noori then went on to state that they (1st American Mortgage) would not be able to extend the loan because the Subject Property is "unacceptable and inadequate Collateral."

30. Thereafter, on or about September 29, 2004, the Plaintiffs, acting out of desperation so as not to lose both their $30,000.00 earnest money deposit, which they had borrowed against their current home, and the Subject Property, then contacted Defendant Wells Fargo Bank.

31. On September 29, 2004**,** the Plaintiffs were approved by Defendant Wells Fargo Bank for a loan in the amount of $450,000.00 to purchase the Subject Property. Defendant Wells Fargo Bank issued a Notice of Loan Commitment dated September 29, 2004 stating, in

pertinent part, that they were approving the Plaintiffs loan application with respect to the Subject Property for a loan in the amount of $450,000.00. Defendant Wells Fargo Bank also provided the Plaintiffs with a copy of its Commitment letter dated September 29, 2004 detailing the terms and conditions of the loan to them.

32. On or about October 25, 2004**,** the Plaintiffs received a letter from Defendant Draper & Goldberg dated October 21, 2004, notifying them that they are in default, and that as a result of their breach of the agreement (the Memorandum of Sale), the Substitute Trustees are authorized and elect to retain their deposit **"as liquidated damages and arrange for the immediate resale of the premises."**

33. On or about November 19, 2004, after conducting an Appraisal of the Subject Property not just once but twice to ensure an accurate Appraisal, Defendant Wells Fargo Bank**,** despite being the current Note holder on said property, denied the loan for substantially the same reason(s) as the other prospective lenders.

### The Bankruptcy of James G. & Iraline G Barnes

34. At all times relevant herein, the subject property was owned jointly by James G. Barnes and Iraline G. Barnes, and the Barnes's were the mortgagees under the note and deed of trust on the subject property.

35. On July 15, 2004, the very same day of the auction and winning bid by Plaintiffs, James G. & Iraline G. Barnes filed a Chapter 7 voluntary bankruptcy petition in U.S. Bankruptcy Court for the District of Columbia, Case No. 04-01124.

36. The Defendants had actual and constructive knowledge of the bankruptcy filing, and they participated in the bankruptcy proceedings.

## COUNT I

## (FRAUD)

37.     Paragraphs 1 through 36 are incorporated herein by reference and the Plaintiffs further state that all of the Defendants, individually and/or in concert, acted deceptively and fraudulently in that they intentionally misrepresented, concealed and withheld material facts affecting the Subject Property from the Plaintiffs including but not limited to (a) that the Subject Property had been offered for sale at public auction on several previous occasions over a period of several years without a consummated sale, (b) that the Subject Property was subject to an easement, (c) that the Subject Property was subject to a leasehold interest of undeterminable duration and an existing tenant, (d) that the property was unsuitable for the purpose intended, (e) that the auction was a sham transaction, (f) that the property was inadequate and unacceptable as collateral for financing, and (g) that the Defendants could not deliver title to the property.

38.     The Defendants, individually and in concert, knew or should have known that the Subject Property, in view of its issues, was not conducive to a good faith purchaser acquiring insurable title, and knew or should have known that any successful bidder on said property at the public auction held on July 15, 2004 could not secure the necessary financing to consummate the sale, and that the Substitute Trustee could not convey insurable title to the property and had no authority to proceed with the transaction.

39. The representations and omissions were in reference to material facts.

40. That they were made with actual and constructive knowledge of their falsity.

41. That they were made with intent to deceive Plaintiffs.

42. That the Plaintiffs relied to their detriment.

43. That the Plaintiffs suffered substantial harm.

## COUNT II

### (MISREPRESENTATION)

44. The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 43 by reference and further states that the Defendants are further liable for misrepresentation.

45. More specifically, the Defendants intentionally misrepresented, concealed and withheld material facts affecting the Subject Property from the Plaintiffs including but not limited to (a) that the Subject Property had been offered for sale at public auction on several previous occasions over a period of several years without a consummated sale; (b) that the Subject Property was subject to an easement; (c) that the Subject Property was subject to a leasehold interest of undeterminable duration and an existing tenant, (d) that the property was unsuitable for the purpose intended, (e) that the auction was a sham transaction, (f) that the property was inadequate and unacceptable as collateral for financing, and (g) that the Defendants could not deliver title to the property in light of the bankruptcy filing.

46. That the Defendants conduct was not in accordance with the facts.

47. That representations and omissions were material.

48. That the Plaintiff relied to their detriment.

49. That the Plaintiffs suffered substantial harm.

## COUNT III

### (BREACH OF CONTRACT)

50. The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 49

by reference and further states that the Defendants Draper and Goldberg, Wells Fargo Home Mortgage, Wells Fargo Bank, and GE breached their contractual obligation to return the Plaintiffs' earnest money deposit if Defendant Draper and Goldberg, as Substitute Trustee, could not convey insurable title to the property.

51. The aforesaid Defendants knew or should have known that insurable title could not be conveyed to the Subject Property because (a) it is subject to an easement that materially affects the conveyance of insurable title, (b) it is subject to a leasehold interest and tenancy that materially affects the conveyance of insurable title, (c) that the collateral is inadequate for securing financing, and (d) that the filing of bankruptcy by the owners of record prevented the continuance of the foreclosure sale.

52. The Defendants failed to return Plaintiffs' security deposit notwithstanding their inability to consummate the transaction.

## COUNT IV

### (WRONGFUL CONVERSION)

53. The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 52 by reference and further states that the Defendants, Draper & Goldberg, Wells Fargo Home Mortgage, Wells Fargo Bank, and GE have wrongfully converted their earnest money deposit in the amount of $30,000.00 in that they have failed and refused to return said deposit and have put it towards their own use intentionally, and without permission or justification, even though Defendant Draper and Goldberg, as Substitute Trustee, cannot not convey insurable title to Subject Property as the facts herein demonstrate, and were required to immediately refund the

deposit to the Plaintiffs.

54. That the Defendants exercise of ownership, dominion and control over Plaintiffs' personal property is unlawful.

55. That Plaintiffs have suffered damages as a result thereof.

## COUNT V

## (CIVIL CONSPIRACY)

56. The Plaintiffs, John Cadet and Yves Cadet, incorporates paragraphs 1 through 56 by reference and further states that the Defendants, in concert and by agreement or understanding, acted deceptively and fraudulently in that they intentionally concealed material facts (inside information) affecting the marketability and insurability of the Subject Property from the Plaintiffs including but not limited to (a) that the Subject Property had been offered for sale at public auction on several previous occasions over a period of several years without a consummated sale; (b) that the Subject Property was subject to an easement; (c) that the Subject Property was subject to a leasehold interest of undeterminable duration and an existing tenant, (d) that the property was unsuitable for the purpose intended; (e) that the auction was a sham transaction, (f) that the property was inadequate and unacceptable as collateral for financing, and (g) that the Defendants could not deliver title to the property in light of the bankruptcy filing by the record owners.

57. Defendants, in concert and by agreement or understanding, knew or should have known that the Subject Property, in view of its insurability issues, was not conducive to a good faith purchaser acquiring insurable title, and knew or should have known that any successful bidder on said property at the public auction held on July 15, 2004 could not secure the

necessary financing to purchase the property because of its unmarketability, uninsurability, and the bankruptcy filing by the record owner of the property.

58.     Defendants, in concert and by agreement or understanding, acted deceptively and fraudulently by allowing MacDonald and Wiss to participate in and fraudulently run up the bid on the Subject Property at the public auction sale held on July 15, 2004.

59.     Furthermore, Defendants, in concert and by agreement or understanding, acted deceptively and fraudulently by advertising the Subject Property as "valuable property" when they knew or should have known that said property's value was materially compromised so as to be unmarketable by the various insurability issues affecting the conveyance of insurable title to the property.

60.     As a result of the aforesaid Defendants acting in concert to engage in deceptive and fraudulent conduct, the Plaintiffs were induced to place an earnest money deposit in the amount of $30,000.00 towards the purchase price of the Subject Property and to bid on the Subject Property so as to be the successful bidder with the reasonable expectation that they would be able to obtain the necessary financing to consummate the purchase of said property.

## COUNT VI

## PUNITIVE DAMAGES

61.     Defendants' conduct was intentional, willful, wanton, and malicious and said conduct justifies the imposition of treble and punitive damages.

**WHEREFORE,** the Plaintiffs respectfully request that this Honorable Court grant them relief as follows:

1. For Compensatory damages in the amount of $30,000 representing Plaintiffs' security

deposit;

2. For additional compensatory damages in an amount to be determine by proof;

3. For punitive damages in the amount of $21,000,000.00

4. For attorney's fees, court costs and all other costs and expenses associated with this matter.

6. For any other relief that this Court may deem just and proper.

**JURY TRIAL DEMANDED ON ALL ISSUES**

Respectfully submitted,

/s/ Yves Cadet_
Yves Cadet
3816 4TH Street, N.W.
Washington, D.C. 20011

/s/ John Cadet__
John Cadet, **Pro** **Se**
3816 4TH Street, N.W.
Washington, D.C. 20011

September 21, 2006

_228940_____
BAR IDENTIFICATION

/s/ Travis A. Murrell
Travis A. Murrell, Esq.
1501-11th Street, NW
Washington, DC 20001
(202) 234-6730 Ext 112
(202) 234 6738 Fax

**VERIFICATION**

We, the undersigned Plaintiffs, hereby declare and affirm that we have read the foregoing

–15–

Amended Complaint and that the averments contained therein are true and correct to the best of our knowledge, information and belief.

>/s/ Yves Cadet_
>Yves Cadet
>3816 4TH Street, N.W.
>Washington, D.C. 20011
>
>/s/ John Cadet__
>John Cadet
>3816 4TH Street, N.W.
>Washington, D.C. 20011