UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN CADET, et al.,<br><br>           Plaintiffs,<br><br>    v.<br><br>DRAPER & GOLDBERG, PLLC, et al.,<br><br>           Defendants. | Civil Action No. 1:05cv02105 |

**DEFENDANTS WELLS FARGO BANK, N.A.'S, WELLS FARGO HOME MORTGAGE, INC.'S, AND G.E. CAPITAL MORTGAGE SERVICES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc. (collectively, "Wells Fargo") and G.E. Capital Mortgage Services, Inc. ("G.E.") move to dismiss the Amended Complaint, pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Plaintiffs lost a $30,000 deposit on a $500,000 real estate contract they entered into at a foreclosure sale because they could pay the remaining purchase price. Plaintiffs allege they were defrauded and should be awarded over $21 million because Wells Fargo, G.E., and others who conducted the foreclosure sale should have disclosed various matters of public record, including the fact that there had been other attempts to hold a foreclosure sale on the property and that the property was subject to an easement for a neighbor's driveway. Nonetheless, the law is clear that there was no duty to disclose anything to Plaintiffs. Moreover, as Plaintiffs concede, the real estate contract expressly provided that the sale was "as is" without "any warranty" and that Plaintiffs' failure to pay within 30 days authorized a forfeiture of the deposit. As such, the Amended Complaint fails to state a claim upon which relief may be granted.

## I. <u>BACKGROUND</u>

Plaintiffs allege that Wells Fargo was the servicer for G.E. with respect to a home mortgage loan secured by property located at 2948 Albemarle Street, N.W., Washington, D.C. 20008 (the "Property"). Am. Complaint at ¶ 8. Plaintiffs allege that the substitute trustee for that loan was L. Darren Goldberg, David Draper, and/or others ("Trustee") (<u>Id</u>. at ¶¶ 3-4), who advertised a foreclosure sale of the Property by public auction to be held on July 15, 2004. <u>Id</u>. at ¶ 10. In their original Complaint, Plaintiffs claimed that a "copy of the Advertisement is attached . . . to and incorporated" to that original Complaint. <u>See</u> Original Complaint at ¶ 11. A copy of the advertisement is also attached hereto as Exhibit A. The advertisement described the Property as "valuable" and required a deposit of $30,000 at the time of sale. Am. Complaint at ¶ 10; Ex. A. Moreover, Plaintiffs allege that the Property was advertised to be:

> sold in "AS IS" condition. Subject to liens of record. Conveyance by special warranty deed. Settlement in 30 days. If Sub. Trustee cannot convey insurable title, purchaser's sole remedy is return of deposit. Additional terms announced at sale.

<u>Id</u>. at ¶ 10.

Plaintiffs appeared at the foreclosure sale on July 15, 2004, with the required earnest money deposit of $30,000. <u>Id</u>. at ¶¶ 13, 15. Other prospective purchasers, including owners of neighboring properties, attended the sale and bid on the Property, but Plaintiffs were the successful bidders with a bid of $500,000. <u>Id</u>. at ¶¶ 13-14. As the successful bidder, Plaintiffs tendered the $30,000 deposit and signed a Memorandum of Sale. <u>Id.</u> at ¶ 15; Original Complaint at ¶ 20. In their original Complaint, Plaintiffs alleged that a "copy of the Memorandum of Sale is attached ... to and incorporated" into that original Complaint. <u>See</u> Orig. Complaint at ¶ 20. The Memorandum of Sale is attached hereto as Exhibit B. The Memorandum of Sale disclaims any representations about the Property:

> The property is sold "as is" subject to all easements, liens, covenants, restrictions of record. The trustee(s) will not sign loan documents in which he makes any warranty with regard to the property.

Ex. B at ¶ 1. The Memorandum of Sale also provides that the purchaser may forfeit its deposit if it cannot settle promptly:

> Settlement must be within 30 days of the sale date. Time is of the essence. If settlement does not occur within this time period, the deposit may be forfeit, and the trustees may avail themselves of all other legal or equitable rights against the defaulting purchaser.

Am. Complaint at ¶ 17; Ex. B at ¶ 6. The Memorandum of Sale further provides that "[i]f the Trustee is unable to convey insurable title to this property for any reason, the sole remedy of the purchaser is the return of the deposit." Id at ¶ 21; Ex. B at ¶ 5.

Plaintiffs were unable to secure the appropriate financing to complete their purchase of the Property, and they requested an extension of time to settle, which Plaintiffs allege was granted on September 20, 2004, with "no specified time . . . given." Am. Complaint at ¶¶ 19-25. Plaintiffs concede that, as of October 21, 2004, they still had not obtained financing. Id. at ¶¶ 26-32. Plaintiffs allege that they applied for loans with several lenders, all of whom declined to make a loan because they deemed the Property to be "inadequate" collateral. Id. at ¶¶ 19, 20, 21, mis-numbered 22, 29, 33. After providing Plaintiffs more than three months to settle the sale of the Property, when the Memorandum of Sale required only 30 days, Trustee notified Plaintiffs in a letter dated October 21, 2004 that they were in default of the terms of the Memorandum of Sale and that, as a consequence, their deposit was forfeited. Id. at ¶ 32.

Based on these allegations, Plaintiffs attempt to raise claims for fraud (Count I), misrepresentation (Count II), breach of contract (Count III), wrongful conversion (Count IV),

3

civil conspiracy (Count V), and punitive damages (Count VI). As explained below, all of these claims fail.

## II. ARGUMENT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "dismissal for failure to state a claim upon which relief can be granted is appropriate where it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief." American Registry of Pathology v. Ohio Cas. Ins. Co., 401 F.Supp.2d 75, 76 (D.D.C. 2005) (internal quotations omitted). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), this Court may consider "facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record." Flynn v. Tiede-Zoeller, Inc., 412 F.Supp.2d 46, 50 (D.D.C. 2006) (internal citations omitted). Although a court may construe a complaint liberally, it "need not accept factual inferences drawn by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must [a court] accept the plaintiff's legal conclusions." Nichols v. Truscott, 424 F.Supp.2d 124, 132 (D.D.C. 2006); Major v. Plumbers Local Union No. 5 of United Ass'n of Journeymen and Apprentices, 370 F.Supp.2d 118, 123 (D.D.C. 2005) ("Conclusory legal and factual allegations ... need not be considered by the court.").

Here, dismissal is warranted because the documents referred and attached to the original Complaint and the Amended Complaint plainly show that Plaintiffs cannot possibly prevail on any causes of action they plead.

### A.     Wells Fargo and G.E. Did Not Engage in Fraud.

In Count I, Plaintiffs allege that the Wells Fargo, G.E.,[1] and the other Defendants engaged in fraud.[2] See Am. Complaint at ¶¶ 37-43. Plaintiffs primarily assert fraud by omission. In particular, Plaintiffs summarily claim that all of the Defendants committed fraud by allegedly **failing to disclose** that there were previous foreclosures on the Property that did not result in a consummated sale, that the Property was subject to an easement and tenancy, that the Property "was unsuitable for the purpose intended," that the sale of the Property was a "sham transaction," that the value of the home on the Property was less than that of the Property itself, and that title to the Property could not be delivered. See Am. Complaint at ¶ 37.

As an initial matter, Plaintiffs' fraud claim does not satisfy Rule 9(b)'s requirements because it impermissibly casts its allegations against all of the Defendants together. Specifically, Plaintiffs allege that "all of the Defendants, individually and/or in concert, ... intentionally misrepresented, concealed and withheld material facts affecting the Subject Property ...." See Am. Complaint at ¶ 37. This summary grouping of the Defendants violates Rule 9(b). "A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250 (D. Md. 2000) (dismissing fraud claims that failed to particularize how certain defendants committed fraud); Kerby v. Mortgage Funding Corp., 992 F. Supp. 787, 799 (D. Md. 1998)

---

[1]     Although the caption of Plaintiffs' Amended Complaint does not name G.E. as a party, paragraph 8 of the Amended Complaint labels G.E. as a defendant. Thus, G.E. also moves to dismiss the Amended Complaint.

[2]     In order "to prove fraud, a plaintiff must show by clear and convincing evidence that there is a false representation of material fact which is knowingly made with the intent to deceive and action is taken in reliance upon the misrepresentation." Pyne v. Jamaica Nutrition Holdings Ltd., 497 A.2d 118, 131 (D.C. 1985).

(noting that "complaint that generally alleged fraudulent scheme without clearly specifying which defendant played which role fails to comport with" Rule 9(b)); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (ruling that Rule 9(b) is "not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"). Plaintiffs' summary grouping of all defendants is also impermissible for claims of fraudulent concealment. "When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant." Odyssey Re Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp.2d 282, 294 (S.D.N.Y. 2000) (ruling that plaintiff may not maintain an action for fraudulent concealment by simply alleging a failure to disclose information "against defendants collectively" and dismissing claims). Because Plaintiffs' fraud claim summarily grouped all of the Defendants together in violation of Rule 9(b), that claim must be dismissed.

Further, this fraud claim fails because Wells Fargo, G.E., and Trustee had no duty to disclose anything. "There is . . . no question that mere silence does not constitute fraud unless there is a duty to speak." Kapiloff v. Abington Plaza Corp., 59 A.2d 516, 517 (D.C. 1948). See also White v. R.J. Reynolds Tobacco Co., 109 F. Supp.2d 424, 430 (D. Md. 2000) (ruling that "a fraudulent concealment claim may be maintained only if ... 'there exists a separate duty of disclosure to plaintiff by defendant'" and concluding that no duty to speak existed in arms-length relationship) (internal citation omitted).[3] Under District of Columbia law, this rule is particularly

---

[3] "District of Columbia derives its common law from [Maryland] and . . . District of Columbia courts have in the past looked to Maryland law for guidance." Conesco Indus., Ltd. v. Conforti and Eisele, Inc., 627 F.2d 312, 315-16 (D.C. Cir. 1980).

true in the circumstances at bar -- a seller has no duty with respect to a prospective purchaser at a foreclosure sale:

> the doctrine of *caveat emptor* applies to foreclosure sales because a trustee make no warranty of title and is generally subject to **no duty to investigate or describe outstanding liens or encumbrances. ... The purchaser must therefore make his own investigation** and determine what liens or encumbrances may exist against the property prior to turning over his deposit.

Stuart v. Am. Sec. Bank, 494 A.2d 1333, 1338 (D.C. 1985) (emphasis added). Because none of the Defendants had any duty to discuss or disclose any fact about the Property, their failure to do so cannot constitute fraud.

The bankruptcy filing does not save Plaintiffs' fraud claim from dismissal. In particular, Plaintiffs' fraud claim alleges that Defendants "could not deliver title to the property" and "had no authority to proceed with the transaction." See Am. Complaint at ¶¶ 37-38. Plaintiffs presumably plead these allegations because Mr. and Mrs. Barnes filed a voluntary bankruptcy petition on the same day as the sale of the Property. Id. at ¶ 35. However, that bankruptcy filing did not prevent G.E. or Wells Fargo from delivering title because the sale occurred **before** the bankruptcy was filed. Plaintiffs themselves allege that the auction at which they successfully purchased the property was held "**on the morning** of July 15, 2004." Id. at ¶ 13 (emphasis added). Moreover, Plaintiffs contend that "the sale of the property was to begin at 10:30 A.M." on July 15, 2004. Id. at ¶ 10. The bankruptcy petition of Mr. and Mrs. Barnes, however, was not filed until 3:08 P.M. on July 15, 2004. See Exhibit C, Voluntary Petition for Bankruptcy filed by

7

Mr. and Mrs James Barnes.[4] Thus, the bankruptcy did not prevent the sale of the Property, prevent delivery of title to Plaintiffs, or otherwise harm Plaintiffs' title to the Property. Indeed, Plaintiffs never allege how the bankruptcy harmed their title to the Property. Rather than allege that their title was insufficient, Plaintiffs claim repeatedly that they could not obtain a loan to complete their purchase the Property. See Am. Complaint at ¶¶ 19-36. Consequently, the bankruptcy did not prevent delivery of title to Plaintiffs,[5] and it cannot serve as the basis for any of Plaintiffs' claims, including their claim for fraud, which must be dismissed.

Plaintiffs also allege that Draper & Goldberg, as trustee for Wells Fargo and G.E., had its agent place an advertisement characterizing the Subject Property as "valuable property.'" Am. Complaint ¶ at 10. They also claim that lenders subsequently refused to loan them money because the property's value was inadequate. Id. at ¶¶ 20, 29. However, characterizing the property as "valuable" is at most merely an opinion, which as a matter of law is not actionable. "Opinions . . . do not constitute representations of material fact upon which a plaintiff successfully may place dispositive reliance." Howard v. Riggs Nat'l Bank, 432 A.2d 701, 706 (D.C. 1981); see also Johnson v. Maryland Trust Co., 6 A.2d 383, 386 (Md. 1939) ("Misrepresentations . . . must relate to facts or matters of fact, and not mere matters of

---

[4]  Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, Wells Fargo and G.E. move this Court to take judicial notice of the date and time of the bankruptcy filing. Because the time and date of this filing were stamped on the petition by the Clerk of the United States Bankruptcy Court for the District of Maryland, these matters are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." See Rule 201(b)(2); S.E.C. v. Bilzerian, 112 F. Supp.2d 12, 15 n.3 (D.D.C. 2000) (taking judicial notice of briefs and petition filed in other court); In Re Sherman, 18 Fed. Appx. 718, 721 (10th Cir. 2001) (ruling that court may take judicial notices of schedules to bankruptcy petition).

[5]  Because the sale was concluded before the bankruptcy was filed, any automatic stay under the bankruptcy rules cannot prohibit the sale. In Re Flowers, 94 B.R. 3, 7 (Bankr. D.C. 1988) (debtor has no right to set aside valid foreclosure sale occurring before filing of bankruptcy); In Re Bobo, 246 B.R. 453, 459 (Bankr. D.C. 2000) (granting relief from automatic stay).

8

expectation or opinion. . . . [R]eference to the value of ... [property] held by the trustee, cannot be construed other than mere opinion or estimate of value"); Saxby v. Southern Land Co., 63 S.E. 423, 424 (Va. 1909) ("[t]he mere expression of an opinion, however strong and positive the language may be, is no fraud;" the statements as to the value were "were trade talk . . . with respect to matters of an essentially uncertain nature"). Moreover, since other people at the auction bid substantial amounts, the Property must have been valuable. Thus, as a matter of law, Plaintiffs have failed to state a claim for fraud.

Finally, Plaintiffs allege that the auction was a "sham transaction," presumably by allowing the owners of the adjacent property -- whom Defendants allegedly know -- to participate in the auction of the Property. Am. Complaint at ¶¶ 13-14, 37. But Defendants had no authority to bar anyone from attending or bidding at an auction. Moreover, Plaintiffs cannot explain how allowing such bidding could be "fraudulent" in the absence of an affirmative representation or the duty to disclose anything.

### B.    Wells Fargo and G.E. Did Not Engage in Misrepresentation.

In Count II, Plaintiffs allege that Wells Fargo, G.E., and the other Defendants are liable for misrepresentation. As an initial matter, this Court has emphasized that misrepresentation is "an element of the tort of fraud, not a separate tort in itself." High v. McLean Fin. Corp., 659 F.Supp. 1561, 1566 n.4 (D.D.C. 1987); Loughlin v. U.S., 209 F. Supp.2d 165, 173 n.9 (D.D.C. 2002) (expressly treating misrepresentation claims as claims for fraud). Thus, Plaintiffs failed to state a claim for misrepresentation. Dismissal is particularly appropriate here, where the alleged statements and omissions on which Plaintiffs base their purported claim for misrepresentation are identical to the statements and omissions on which they base their fraud claim. See Am. Complaint at ¶¶ 37, 45.

In addition, Plaintiffs' misrepresentation claim fails because Wells Fargo, G.E., and the other Defendants did not make any affirmative representations as to anything. The Memorandum of Sale and the advertisement state that the sale was "as is." This means that the seller is making no representations. It is also clear from the face of the documents attached to the original Complaint that Defendants did not represent that title was insurable. Indeed, if anything, the Memorandum of Sale suggests that title might not be insurable because it allowed for the possibility of a refund of Plaintiffs' deposit if Plaintiffs were unable to secure title insurance. See Am. Complaint ¶ 10; Ex. A; Ex. B ¶ 5. Thus, Defendants cannot be liable for misrepresentation in that regard.

Moreover, as discussed below, Plaintiffs confuse "insurable title," i.e., the ability to obtain title insurance, with the "marketable title," i.e., the ability to demonstrate sufficient value to warrant a $500,000 mortgage loan. See Part C, infra. Even if Defendants had represented that title to the Property was insurable, Plaintiffs never allege they could not obtain title insurance. As such, Plaintiffs have not adequately alleged that any such representation was false.[6]

### C.    Wells Fargo and G.E. Did Not Breach the Contract with Plaintiffs.

In Count III, Plaintiffs claim that Wells Fargo, G.E., and the other Defendants' failure to refund the deposit constitutes a breach of contract. Plaintiffs contend that Defendants failed to

---

[6]    Furthermore, Plaintiffs could not have "reasonably relied" on any lack of disclosure since everything was a matter of public record. For instance, Plaintiffs acknowledged in their original Complaint that foreclosure notices and the easement in question are filed in the D.C. land records. Original Complaint at ¶¶ 49, 51-52. A claim for misrepresentation requires that "reliance" be "reasonable." In re U.S. Office Prods. Co. Sec. Litig., 251 F. Supp. 2d 58, 74 (D.D.C. 2003). Here, Plaintiffs' failure to check the public records as to the Property and reliance upon the alleged omissions of Defendants was unreasonable as a matter of law, particularly given the rule of caveat emptor in foreclosure sales. Kapiloff, 59 A.2d at 517 ("[t]he Act of Congress on which he relied as a ground of voiding the purchase was as readily available to him as it was to the vendor. Under these circumstances it cannot be said that the vendor practiced a fraud upon him").

refund the earnest money deposit to them when the contract called for a refund. Am. Complaint at ¶¶ 50-51. But the Memorandum of Sale requires a refund only if Plaintiffs cannot obtain title insurance.[7] Plaintiffs never allege they satisfied this condition.

Insurable title means that a title insurance company will insure title, not that a lender will loan money to complete purchase. "Marketable title and insurable title are not generally synonymous." Kipahulu Inv. Co. v. Seltzer P'ship, 675 P.2d 778, 781 (Haw. Ct. App. 1983), cert. denied, 744 P.2d 781 (Haw. 1984) (citing R. Powell & P. Rohan, Powell on Real Property § 1044 (1982); Hebb v. Severson, 201 P.2d 156, 160 (Wash. 1948)). Accord, U.S. Bank v. Smith, No. 18875/02, 7 Misc.3d 1005(A), 801 N.Y.S.2d 243 (Table), 2005 WL 763059 (N.Y.Sup. Feb. 15, 2005) ("insurable title is not necessarily a marketable one"). "A marketable title is a title which is free from encumbrances and any reasonable doubt as to its validity, and such as a reasonably intelligent person, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of ordinary business prudence." Sinclair v. Weber, 104 A.2d 561, 565 (Md. 1954). "Accordingly a marketable title must be so far free from defects as to enable the purchaser not only to hold the land in peace but also, if he wishes to sell it, to be reasonably sure that no flaw will appear to disturb its market value." Id. In contrast, warranting "insurable title" simply means that "the vendor [must] convey . . . such title as a designated title company will approve and insure." Hebb, 201 P.2d at 160. Where vendor can deliver such title "the vendee is of course bound by

---

[7] This Court may consider these documents in ruling on a motion to dismiss. E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997), aff'd, 254 F.3d 315 (D.C. Cir. 2000) ("[i]n determining whether a complaint fails to state a claim, [a court] may consider … any documents either attached to or incorporated in the complaint"); Baker v. Henderson, 150 F.Supp.2d 17, 19 n.1 (D.D.C. 2001) (same); Cortec Indus., Inc. v. Sum Holding L.P, 949 F.2d 42 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992) (holding that defendants may attach "papers [that] were integral to … [plaintiffs'] complaint" to their motion to dismiss, even if plaintiffs did not attach these papers to their complaint).

11

the agreement and is not justified in refusing a title which conforms thereto merely because it is objectionable on other grounds." Id.

Plaintiffs do not allege that any title company refused to provide them with title insurance, or that no title company would insure title. Rather, Plaintiffs allege that lenders refused to loan them enough money to complete purchase of the Property because those lenders did not believe the Property had sufficient value to secure a loan of $500,000. See e.g., Am. Complaint at ¶¶ 19-21, 22, 24-26, 29, 33. This set of circumstances is remarkably different than an inability to obtain title insurance. Thus, under the contract's terms, Plaintiffs are not entitled to recover the deposit.

Further, Paragraph 6 of the Memorandum of Sale expressly provides that Plaintiffs would forfeit their deposit as liquidated damages:

> Settlement must be within 30 days of the sale date. Time is of the essence. If settlement does not occur within this time period, the deposit may be forfeit, and the trustees may avail themselves of all other legal or equitable rights against the defaulting purchaser.

See Ex. B at ¶ 6. The Court must disregard Plaintiffs' conclusory breach of contract allegations that conflict with the face of the contract, which clearly permits the forfeiture of the deposit. See Thompson v. Illinois Dept. of Professional Regulation, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."). As a result, Plaintiffs have failed to state a claim for breach of contract.

D.   **Wells Fargo and G.E. Did Not Wrongfully Convert Plaintiffs' Property.**

In Count IV, Plaintiffs claim that Wells Fargo, G.E., and the other Defendants wrongfully converted Plaintiffs' earnest money deposit. Am. Complaint at ¶ 53. Conversion "has generally been defined as any **unlawful** exercise of ownership, dominion or control over the personal

12

property of another in denial or repudiation of his rights thereto." <u>Flocco v. State Farm Mut. Auto. Ins. Co.</u>, 752 A.2d 147, 158 (D.C. 2000) (internal quotations omitted; emphasis added). Here, because the contract expressly permits the retention of the deposit, the retention of the deposit cannot be "unlawful." Thus, Plaintiffs' claim fails.

 E. <u>**Wells Fargo and G.E. Did Not Engage in a Civil Conspiracy**</u>.

In Count V, Plaintiffs claim that Wells Fargo, G.E., and the other Defendants conspired to deprive Plaintiffs of their deposit. Am. Complaint at ¶¶ 56-60. Under District of Columbia law, a plaintiff raises a count of civil conspiracy by demonstrating "(1) an agreement between two or more persons, (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." <u>Paul v. Howard Univ.</u>, 754 A.2d 297, 310 (D.C. 2000) (internal citation omitted). There is no independent tort action for civil conspiracy. <u>See</u> <u>Lamont v. Haig</u>, 590 F.2d 1124, 1136 n.73 (1978).

Aside from the fact that Plaintiffs have failed to allege any agreement between Defendants, they have also failed to allege an underlying unlawful act, as discussed above. <u>Elliott v. Healthcare Corp.</u>, 629 A.2d 6, 10 (D.C. 1993). Plaintiffs' claim of conspiracy, therefore, fails.

 F. <u>**Plaintiffs' Purported Cause of Action for "Punitive Damages" Fails.**</u>

The Amended Complaint labels Count VI as a claim for "Punitive Damages." This purported count consists of only one sentence, which again groups all of the Defendants together and summarily alleges that "Defendants' conduct was intentional, willful, and malicious and said conduct justifies the imposition of treble and punitive damages." <u>See</u> Amended Complaint at ¶ 61.

Under the law of the District of Columbia, however, punitive damages are a remedy; they are not a cause of action. Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. America, 81 F. Supp.2d 70, 74 (D.D.C. 2000) (ruling that "punitive damages is a remedy and not a freestanding cause of action" and dismissing a cause of action for punitive damages); Park v. Hyatt Corp., 436 F. Supp.2d 60, 63 (D.D.C. 2006) (ruling that "punitive damages claim will be treated as part of a prayer for relief and not as a cause of action."); Johnson v. Chase Manhattan Mortgage Corp., No. 04-344, 2006 WL 2506598, at *3 (D.D.C. Aug. 28, 2006) (dismissing claim for punitive damages because it is only a remedy rather than a freestanding cause of action). Thus, Count VI must be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint pursuant to Rule 12(b)(6).

Respectfully submitted,

/s/ Gary C. Tepper
Gary C. Tepper (D.C. Bar No. 348698)
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5339
(202) 857-6000

Attorneys for Defendants
Wells Fargo Bank, N.A. (for itself and as successor to Wells Fargo Home Mortgage, Inc.) and G.E. Capital Mortgage Services, Inc.

October 23, 2006