UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN CADET, et al. ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 1:05-cv-02105 PLF |
| ) | PLF |
| DRAPER & GOLDBERG, PLLC, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**RESPONSE TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW the Defendants Draper & Goldberg, PLLC, L. Darren Goldberg, and David W. Draper, Jr. (hereinafter "Defendants"), by and through counsel, and files their Response to Plaintiffs' Opposition to Defendants' Motion to Dismiss. In support of their Response these Defendants submit the accompanying Memorandum of Points and Authorities.

Respectfully Submitted by

  **/s/ David M. McPherson**
L. Darren Goldberg (Bar #450336)
David M. McPherson (Bar #488358)
Draper & Goldberg, PLLC
803 Sycolin Road, Suite 301
Leesburg, Virginia 20175
703-777-7101 (office)
703-995-4542 (facsimile)
*Counsel for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN CADET, et al. ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 1:05-cv-02105 PLF |
| ) | PLF |
| DRAPER & GOLDBERG, PLLC, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' RESPONSE TO PLAINTIFFS'**

**Argument**

The Matter before the Court is a simple contract dispute where the Plaintiffs breached the agreement and seek to excuse their conduct by citing spurious facts and making unsupported arguments.  The Plaintiffs purchased real property at a foreclosure sale and failed to tender the purchase price as required, even after the Defendants made numerous concessions by repeatedly extending the time for performance.   The Plaintiffs purchased the property "as is" and now cite numerous perceived flaws with the property as justification for their non-performance.

**I. DOCTRINE OF CAVEAT EMPTOR**

Plaintiffs cite *Loughlin v. U.S.*, 230 F. Supp. 2d 26 (D.D.C. 2002) to support their assertion that the doctrine of *caveat emptor* applies to real estate defects that are "observable and discoverable by an ordinary prudent person upon reasonable inspection and investigation."  Plaintiffs' Opposition, page 3.  However, *Loughlin* involved buried toxic chemicals not easily discernible.  Further, the seller of the property was allegedly

aware of the possible danger and did not inform the purchaser. More importantly, the sale of property in *Loughlin* was in a non-foreclosure setting.

One of the cases relied upon by the Court in *Stuart v. American Sec. Bank*, 494 A.2d 1333, 1338 (D.C. 1985) when examining the doctrine of *caveat emptor* in the context of a foreclosure sale is the Virginia case of *Feldman v. Rucker*, 201 Va. 11 (Va. 1959). The *Feldman* Court explained the duties of a trustee at a foreclosure sale, citing favorably the trial court's opinion that:

> Such a trustee is an agent acting under a power of sale. He has no powers except those conferred upon him by the deed of trust. He is agent for both parties, the owner and the lienor, under duties to them. Among those duties is that of bringing 'the property to the hammer under every possible advantage to his cestui que trusts,' using all reasonable diligence to obtain the best price. To the bidders he owes no duty except to refrain actively from doing anything to hamper them in their search for information or to prevent the discovery of defects by inspection. He is under no duty to make representations or to answer questions; but if questions are asked and he undertakes to answer, then such answers must be full and accurate -- nothing must then be concealed.

*Id.* at 20. The *Feldman* Court also cited 37 Am. Jur., Mortgages, § 821, p. 209, stating that "[a]t a sale by a trustee under a power, where the facts or means of information concerning the condition and value of the property sold are equally accessible to both parties, and nothing is said or done which tends to impose on the other, or to mislead him, there is no fraud of which the law can take notice". *Feldman*, 201 Va. at 20.

The Plaintiffs ignore the doctrine of *caveat emptor* and seek to impose a duty that does not exist upon the trustee in a foreclosure sale to ascertain and disclose information. Plaintiffs cite "two primary defects", "an unrecorded leasehold estate" and the allegation that the property is "[a]n unbuildable lot … not [of] use for residential purposes", to excuse their breach of contract. Plaintiffs' Opposition, pages 3-4. Even if the Plaintiff is correct as to the facts of these defects, the Defendants had no duty to disclose these or

other the alleged defects as "the facts or means of information concerning the condition and value of the property" was accessible to the Plaintiffs. 37 Am. Jur., Mortgages, § 821, p. 209, *supra*.

The Plaintiffs allege that the Defendants had knowledge that Ms. Wiss, the owner of adjacent property, "claims an unrecorded leasehold estate of perpetual duration" upon the property. *Id*. at 3. The Plaintiffs then make the argument that this claim "effectively renders the property worthless to any other purchaser." As in their Amended Complaint, Plaintiffs fail to cite any case, statute, or treatise, that supports their argument that some "claimed" unrecorded leasehold interest affects the rights of a bona fide purchaser holding what would be a superior claim, rendering worthless the said purchaser's interest in the property.

Ms. Wiss received notice of the foreclosure sale because she had a claimed interest in the property. She, as a member of the public, was allowed to bid at the public sale. Her interests, if any, in the property are wiped out in a foreclosure sale of which she had notice. There not only was no duty to disclose Ms Wiss' purported interest to the Plaintiffs, it is not a "defect" because her claim would not impair the Plaintiffs' interest in the property had they not breached the contract and taken title. The Plaintiffs argument about this purported interest held by Ms. Wiss fails because it is a "defect" only in the minds of the Plaintiffs.

Plaintiffs' allegations that the property was "defective" because it is an "unbuildable lot" is equally without force. Plaintiffs state that "one would have to commission a professional survey of the property to ascertain that the lot can not be use (sic) for residential purposes" (Plaintiffs' Opposition, page 4) in an effort to excuse their

lack of diligent examination of the property prior to attending the sale. This presumably is an amplification of their pleadings where the Plaintiffs allege throughout that the "subject property was unsuitable for the purpose intended". Plaintiffs' Amended Complaint, paragraphs 37, 45, and 56.

As there are no allegations that the Defendants made representations regarding the suitability of the property for the Plaintiffs' intended purposes, it is not clear what argument the Plaintiffs' are making. Assuming arguendo that the issue of build-ability is germane, the Plaintiffs' argument is undercut by their own statements.

Plaintiffs do not explain why knowledge of the build-ability of the property has been imputed to the Defendants. As alleged, this issue is only discernible from a professional survey of the property. Plaintiffs have gone past imposing a duty upon the Defendants to disclose information, and now in essence are requiring the Defendants to conduct surveys of property and to report the results to prospective bidders.

Their reliance on the Bankruptcy Trustee's opinion to abandon the property as some sort of proof that the Defendants had knowledge of this defect is unpersuasive because (a) as stated, it was filed October 4, 2005, after the sale; and (b) is only the Trustee's opinion as to the value of the property to the Bankruptcy estate and is not conclusive of anything.

Alternatively, if this defect is discernible via an inspection of the property and examination of the land records, the Plaintiffs fail to cite any facts to excuse their lack of diligence.

## II.  INSURABILITY OF TITLE

The Plaintiffs, in section III of their opposition, continue to misrepresent the issue of insurability of title. As a preliminary matter, the Defendants do not "concede that they cannot convey marketable title". Plaintiffs' Opposition, page 5. Rather, the Defendants object to the Plaintiffs' attempts to re-write the terms of the contract through their pleadings. As stated in paragraph 16 of their Amended Complaint, the contract allowed for the return of the Plaintiffs' deposit if the "trustee is unable to convey **insurable** title" (emphasis added).

Plaintiffs do not have an understanding of title insurance. Lenders, as a general matter, do not, as stated on page 5 of the Plaintiffs' Opposition, "make a preliminary determination on insurability". This is because, as a general rule, lenders do not self-insure. Title Insurance companies make a determination as to the insurability of title. Further, title insurance does not relate to the value of the property. It insures one's title to the property, not its value.

While it may be true that in a "financed real estate transaction [the] underwriting process does not take place until after the lender's approval" (Plaintiffs' Opposition, page 5), this does nothing to help the Plaintiffs as the sale was not predicated on financing. Title insurance policies are available that benefit the owner and not just the lender. That is, the Plaintiffs can obtain title insurance on their own and are not required to obtain financing to obtain title insurance.

Plaintiffs continue to cite their inability to obtain financing as evidence that the Defendants could not deliver insurable title. The issue of financing is not pertinent as the sale was not conditioned upon Plaintiffs' ability to obtain financing. The terms of sale make explicit that this was a cash sale, and that the Plaintiffs had 30 days to settle.

The Plaintiffs never tendered their bid price even though the Defendants at all times pertinent to this matter were willing and able to deliver insurable title to the property. Any of the alleged defects in the property might impair the value of the property to the Plaintiffs, but these defects clearly do not affect the insurability of title to it. Plaintiffs wish to evade the consequences of their breach by making unsupported arguments that the Defendants could not perform as required under the contract.

### III.  FRAUD

Plaintiffs have yet to adequately plead a claim for fraud. They concede that the property was sold "as is" at a foreclosure sale. Plaintiffs offer no evidence or allegations of statements made by the Defendants that were misleading in this regard. First and foremost, Plaintiffs continue to cite the fact that "the Defendants had attempted to foreclose [on the property] on several other occasions." In their Amended Complaint Plaintiffs characterize this information as a material fact not disclosed. In their Opposition Plaintiffs offer the prior foreclosure attempts as proof that the Defendants had actual knowledge of the alleged defects of the property.

Notices to foreclose are public record. Pursuant to D.C. Code § 42-815(b) "copy of said notice [is required to be] sent to the Mayor of the District of Columbia, or his designated agent, at least 30 days in advance of the date of said sale". The Defendants, to perfect notice to the Mayor's agent, record the Notice to Foreclose in the land records. Presumably it was from an examination of the land records that the Plaintiffs discovered the previous foreclosure attempts. This information in no way was concealed from them. If this information would have affected their bidding, it was incumbent upon them to examine the land records prior to the sale. Regardless of the fact that the prior

foreclosure might have affected their bidding, plaintiffs have failed to show how this fact is any way material to the matter at hand.

For the purposes of a Motion to Dismiss, all well-pleaded allegations are taken as true. Plaintiffs' complaint should be dismissed because, even if the Defendants had actual knowledge of every one of the alleged defects in the property, there was no duty to disclose them to the Plaintiffs. Contrary to their assertion, each of the defects are either immaterial or were in fact observable and discoverable through diligent examination of the land records and inspection of the property. The Defendants made no representations regarding (i) tenancies, (ii) financing, and (iii) the property's frontage. As no representations were made regarding these facets, no duty was incurred to correct representations not made.

Plaintiffs further allege that "from July 15, 2004, until October 21, 2004 … the Defendant continued to make affirmative misrepresentations and omissions in reference to the property, its defects, and the availability of residential financing." Plaintiffs' Opposition, paragraph 7. These are new allegations not contained in the Amended Complaint. Plaintiffs fail to state what affirmative misrepresentations were made, and further, fail to explain how statements made after the sale relate to the formation of the contract and their failure to perform to its terms.

## Conclusion

The trustee at a foreclosure sale owes a duty to the leinholder and the mortgagor to obtain the best possible price for the subject property. Where, as here, the property is sold "as is" with no other representations, the trustee has no duty to disclose information to the bidder that might chill the bidding. The bidder has the obligation to thoroughly

examine the property and the land records to fully appreciate what they are buying. Further, when the property is sold for cash, the bidder has the duty to have the required funds readily available.

The Plaintiffs purchased the property and were unable to obtain financing. They then breached the contract by failing to settle on the property even though the Defendants extended the time to settle at their request. They now seek relief from their breach of contract by misrepresenting the law and citing spurious facts. Every alleged defect in the property was either discernible through due diligence or immaterial. Plaintiffs give no examples of misleading or fraudulent statements made by the Defendants, and in stead hope that a duty to disclose information will be created solely for their benefit.

                                              Respectfully submitted by:
                                              Draper & Goldberg, PLLC, and
                                              L. Darren Goldberg, and
                                              David W. Draper, Jr.

                                              **/s/ David M. McPherson**
                                              L. Darren Goldberg (Bar #450336)
                                              David M. McPherson (Bar #488358)
                                              Draper & Goldberg, PLLC
                                              803 Sycolin Road, Suite 301
                                              Leesburg, Virginia 20175
                                              703-777-7101 (office)
                                              703-995-4542 (facsimile)
                                              *Counsel for the Defendants*

## **CERTIFICATE OF SERVICE**

      I, David M. McPherson, certify that on this 1st day of December, 2006, I mailed via United States Postal Service, first class mail, postage prepaid, a copy of Defendants' Response to Plaintiffs' Opposition to Defendants' Motion to Dismiss, with accompanying Memorandum of Points and Authorities, as follows:

Counsel for Plaintiffs:
Travis A. Murrell
Murrell & Associates, PLLC
1501 – 11th Street, NW
Washington, DC 20001

Counsel for Defendants Wells Fargo Bank, N.A., Wells Fargo
Home Mortgages, Inc., and G.E. Capital Mortgage Services, Inc.:
Gary C. Tepper
Joshua A. Fowkes
Arent Fox, PLLC
1050 Connecticut Avenue, N.W.
Washington, DC  20036

                                                       /s/ David M. McPherson
                                                       David M. McPherson