UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN CADET, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:05cv02105 |
| DRAPER & GOLDBERG, PLLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS WELLS FARGO BANK, N.A.'S, WELLS FARGO HOME MORTGAGE, INC.'S, AND G.E. CAPITAL MORTGAGE SERVICES, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc. (collectively, "Wells Fargo"), and G.E. Capital Mortgage Services, Inc. ("G.E.") respectfully submit this Reply to Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss. Plaintiffs' Opposition cannot save any of their claims from dismissal. First, with respect to their fraud claim, Plaintiffs cannot satisfy the limited exception to the well-settled doctrine of caveat emptor because they failed to make *any* investigation of the Property. Although Plaintiffs try to scapegoat others for the Property's circumstances that they could have easily discovered (and later *did* easily discover), their refusal to make any investigation shows that they have only themselves to blame.

Moreover, Plaintiffs' fraud claim should be dismissed because their attempt to impose a duty to speak on Wells Fargo and G.E. fails. Further, Plaintiffs cannot circumvent their fatal error of summarily — and impermissibly— grouping Defendants together in their fraud claim. Finally, although the contract requires a refund of Plaintiffs' deposit only if they cannot obtain

title insurance, Plaintiffs have never alleged in their Complaints or their Opposition that the Property's title is uninsurable, so their contract claim fails. For all these reasons, Plaintiffs' claims should be dismissed.

## **DISCUSSION**

A.   **Plaintiffs Cannot Meet the Limited Exception to the Doctrine of Caveat Emptor.**

   1.   *Because Plaintiffs Made No Investigation of the Property, They Cannot Blame Others for the Property's Circumstances.*

Although Plaintiffs recognize the well-settled doctrine of caveat emptor, they argue that that doctrine does not apply because the Property's two supposed defects — an unrecorded leasehold and an "unbuildable lot" — are not "readily observable or discoverable by an ordinary prudent person upon reasonable inspection and investigation." Pl. Opp. at 3. This argument fails. Significantly, Plaintiffs had over two months to inspect the Property. Amend. Compl. at ¶ 9 (Plaintiffs learned of July 15, 2004 sale on May 10, 2004). However, rather than make a reasonable investigation, Plaintiffs only "view[ed] the Subject Property at a distance by driving around the street where it is located a few days before the auction." Original Complaint at ¶ 15. As a result, Plaintiffs cannot blame others for their own failure to make *any investigation* — much less a reasonable investigation — during these two months. Plaintiffs' failure to investigate is particularly unreasonable because (a) the Property was sold at a foreclosure sale; (b) the Advertisement stated that the sale was "AS IS;" and (c) the Memorandum of Sale provides that the "property is sold 'as is' subject to all easements, liens, covenants, restrictions of record" and "without warranty." Mot. to Dismiss, Ex. A and B.

If Plaintiffs had made a reasonable investigation — as they did *after* entering the contract — they would have discovered the Property's circumstances of which they now complain. Consequently, Plaintiffs cannot escape dismissal by blaming others for their own mistakes.

### 2. *The Leasehold Estate Does Not Fall Within the Limited Exception to Caveat Emptor.*

The leasehold estate does not fall within the limited exception to caveat emptor. First, it was readily discoverable. In fact, *before* they defaulted, Plaintiffs had already discovered that the Property was "tenant occupied" and investigated whether a Certificate of Occupancy existed. Original Complaint at ¶46. Additionally, Plaintiffs never allege that they made any effort to determine whether a leasehold estate existed — even through simple steps such as asking the Defendants or persons on neighboring properties, or simply visiting the Property to see for themselves. Further, not only is actual possession of real property — such as a lessee — "the most common exception to filing and recording requirements," but actual possession "puts the world on notice of possible imperfections in ownership." First Savings Bank of Virginia v. Barclays Bank, S.A., 618 A.2d 134, 138 (D.C. 1992) citing Clay Properties, Inc. v. Washington Post Co., 604 A.2d 890, 897 (D.C. 1992) (noting that possession generally requires purchaser to inquire as to possessor's property interest).

Second, this leasehold estate has nothing to do with Plaintiffs' default on the purchase of the Property. Instead, Plaintiffs themselves allege that they defaulted because they could not secure a loan to finance their purchase and that they could not receive a loan because of "unacceptable and inadequate collateral" — which is entirely unrelated to the tenancy. Amend. Compl. at ¶¶19, 20, 21, misnumbered 22, 29, 33.[1] Nothing in the record states or even implies that the tenancy had anything to do with Plaintiffs' inability to borrow money to complete the sale. Indeed, because the leasehold estate is *unrecorded*, it is immaterial to the Property's value. Thus, the leasehold estate cannot save Plaintiffs' fraud claim from dismissal.

---

[1] Although the Memorandum of Sale required the Trustee to provide Plaintiffs with only thirty days to settle the sale of the Property, the Trustee gave Plaintiffs over three months. Amend. Compl. at ¶32.

### *3.  The "Unbuildable Lot" Does Not Fall Within the Limited Exception to Caveat Emptor.*

For several independent reasons, Plaintiffs' argument that the "unbuildable lot" falls under the limited exception to caveat emptor fails.  First, Plaintiffs offer no evidence that the lot is "unbuildable."[2]  In fact, Plaintiffs themselves admit that they learned from the D.C. Department of Consumer and Regulatory Affairs "that the Subject Property *could be further built on* after it has been surveyed."  Original Complaint at ¶46 (emphasis added).

Second, because the Advertisement clearly listed the Property's address and Lot and Square numbers, Plaintiffs could have discovered significant information about whether the lot was "unbuildable."  In fact, after entering into the Memorandum of Sale, Plaintiffs ordered a survey of the Property from the D.C. Surveyor's Office.  Id. at ¶51.  By simply inquiring at the D.C. Surveyor's Office, Plaintiffs could have learned that the Property was a "record lot" instead of a "survey lot" and that modifying the lot was necessary to build or remodel the existing structure.  Original Complaint at ¶19 (Property registered at D.C. Surveyor's Office as record lot).  Indeed, the other bidders at the auction knew of these facts.  Id.  Finally, Plaintiffs concede that they learned significant information after the sale by simply conducting a title search:

> "Plaintiffs' then counsel, on behalf of the Plaintiffs, conducted a title search of the Subject Property and discovered that approximately ten (10) Notices of Foreclosure Sale had been issued against the same owner involving the Subject Property from December 1990 through June 10, 2004.  He also discovered that the Subject Property had been auctioned off at public auctions on several occasions during that same time period without there being a consummated sale …."

---

[2] Plaintiffs' Opposition consistently makes these sweeping factual assertions without a shred of evidentiary support.  As a result, these unsupported, self-serving assertions should not be considered.  In addition, Plaintiffs note that the Bankruptcy Trustee filed a Notice of Intent to Abandon the Property, but that notice was filed over a year *after* Plaintiffs breached the contract.

Original Complaint at ¶ 49. Because this information was all readily obtainable, Plaintiffs' argument fails, and caveat emptor bars their fraud claim.

### 4. *D.C. Case Law Regarding the Exception to Caveat Emptor Requires Dismissal.*

The facts at bar are remarkably different than the facts in the case on which Plaintiffs rely to try to circumvent caveat emptor, Loughlin v. U.S., 230 F.Supp.2d 26 (D.D.C. 2002). In Loughlin, the defects in the property were "toxic chemical and munitions" that were concealed behind a retaining wall and pit that were buried deep in the ground and uncovered only through "excavation." Id. at 50. As a result, the Court concluded that the chemicals buried in a pit covered by a retaining wall were not reasonably observable, but were impossible to discover even through soil tests. Id.

In contrast, Stuart v. American Security Bank is very similar to the facts at bar. There, the plaintiff — who had purchased a property at a foreclosure sale — alleged that the defendants had concealed special tax assessments against the property. Stuart v. American Security Bank, 494 A.2d 1333, 1335 (D.C. 1985). The court emphasized that "a trustee generally has no obligation to disclose liens or interests which the purchaser could have discovered by his own investigation. … The purchaser must therefore make his own investigation and determine what liens or encumbrances may exist against the property prior to turning over his deposit." Id. at 1338. The court noted that before the purchaser bought the property, he had not reviewed the property's outstanding taxes or conducted a title search on the property. Id. at 1336. The court underscored the plaintiff's lack of investigation before he purchased the property by noting that he had later discovered the tax assessments at the Office of Recorded of Deeds. Id. at 1339. It emphasized that the plaintiff's subsequent discovery of this information "demonstrated that he knew where to find information pertinent to the property." Id. Fittingly, the court underscored

that the purchaser's "*fail[ure] to obtain the information before the foreclosure sale is no one's fault but his own.*" Id. (emphasis added).

As demonstrated above, the facts of which Plaintiffs complain were readily discoverable. Plaintiffs simply failed to investigate the Property in the two months before the auction. As a result, caveat emptor bars Plaintiffs' fraud claim fails.

**B.      Plaintiffs Have Never Alleged — in Either Complaint or in Their Opposition — That Title Is Not Insurable.**

Plaintiffs acknowledge the distinction between insurable title and marketable title. Pl. Opp. at 5. However, they try to avoid this distinction by reciting inapplicable and irrelevant statements regarding underwriting, and they never dispute that the Memorandum of Sale requires Wells Fargo and G.E. to deliver only "insurable title": "If Sub. Trustee cannot convey insurable title, purchaser's sole remedy is return of deposit." Ex. B to Mot. to Dismiss at ¶ 5. And Plaintiffs have never alleged — much less demonstrated — that Wells Fargo and G.E. failed to deliver insurable title or that insurability of title caused them to default. Instead of claiming that title insurers had problems with the title, Plaintiffs allege that their prospective lenders declined to make a loan because the lenders deemed the Property to be "inadequate" collateral. Amend. Compl. at ¶¶19, 20, 21, misnumbered 22, 29, 33. See also Original Complaint at ¶46 ("prospective lenders considered the Subject Property to be 'unacceptable'"); id. at ¶25 (refusal due to "unacceptable financing risk"); id. at ¶28 ("unsuccessful efforts to obtain a loan"); id. at ¶37 ("[B]ecause of the difficulty they were having in obtaining a loan to purchase the Subject Property …"). The insurability of title did not prevent the sale; in fact, it has simply never been at issue. As a result, Plaintiffs' claim for breach of contract fails.

**C.      Plaintiffs' Attempt to Impose a Duty to Speak on Wells Fargo and G.E. Fails.**

Desperate to save their fraud claim, Plaintiffs cite a case from a Delaware court for the proposition that the parties have a duty to speak "when disclosures are necessary to prevent statements actually made from being misleading." Pl. Opp. at 6. However, Plaintiffs' Opposition never identifies the statements that Wells Fargo or G.E. "actually made" that supposedly impose the duty to speak.

Plaintiffs' Amended Complaint refers to the Advertisement, but the Advertisement did not impose a duty to speak for two reasons. First, it expressly states that the Property would be sold "AS IS." Second, Plaintiffs never show how the Advertisement (or any other statement) was in any way "misleading." In fact, nothing about the Advertisement could possibly have misled Plaintiffs.[3]  Finally, Defendants' supposed knowledge of the allege defects cannot impose a duty to speak on them. Stuart, 494 A.2d at 1335 (holding trustee has no duty to disclose and purchaser must make own investigation). For all of these reasons, Wells Fargo and G.E. owed no duty to speak. Thus, Plaintiffs' fraud claim should be dismissed.

**D.      Because Plaintiffs Cannot Circumvent the Requirements of Rule 9(b), Their Fraud Claim Warrants Dismissal.**

Plaintiffs try to remedy their fraud claim's impermissible summary grouping of the Defendants by arguing that the Defendants are in an agency relationship. *See* Pl. Opp. at 10. However, Plaintiffs cite nothing to support this argument, and the cases prohibiting this summary grouping when pleading fraud claims cited in the Motion to Dismiss do not support their argument either. See Mot. to Dismiss at 5-6; see e.g. Mills v. Polar Molecular Corp., 12 F.3d

---

[3] Further, in a meritless attempt to show that they were somehow misled, Plaintiffs rely on Draper and Goldberg's supposed misrepresentations made *after* they entered into the Memorandum of Sale. Logically, of course, representations made *after* Plaintiffs entered into the Memorandum of Sale could not have misled them into entering into it.

1170, 1175 (2nd Cir. 1993) (affirming dismissal because plaintiff failed to link fraud allegations to particular defendants); <u>Odyssey re Ltd. v. Stirling Cooke Brow Holdings Ltd.</u>, 85 F. Supp.2d 282, 294 (S.D.N.Y. 2000) (dismissing fraud counts because plaintiff never distinguished "which of the six parties … was specifically responsible for the failure to disclose"). Plaintiffs cannot ignore the strict and heightened requirements for pleading fraud by casually asserting that the Defendants are in an agency relationship. Permitting Plaintiffs to vaguely group the Defendants in this manner would not give Wells Fargo and G.E. the fair notice that is both necessary to defend a fraud claim and required under the Rule 9(b). Accordingly, this fundamental error also warrants dismissal.

## CONCLUSION

Plaintiffs' Opposition cannot save their claims. Although they were attending a foreclosure sale based on an advertisement that expressly stated that the sale was "AS IS," Plaintiffs failed to make ***any*** investigation of the Property. Plaintiffs try to scapegoat others, but they have only themselves to blame for not discovering readily-available information.

Additionally, Plaintiffs have never alleged in their Complaints or their Opposition that the Property's title is uninsurable. Moreover, Plaintiffs' Opposition failed to impose a duty to speak on Wells Fargo and G.E. Further, Plaintiffs' Opposition did nothing to cure their fatal problems of summarily — and impermissibly— grouping the Defendants together in their fraud claim. For these reasons, all of Plaintiffs' claims should be dismissed.

        Respectfully submitted,

        */s/ Joshua Fowkes*
        Gary C. Tepper (D.C. Bar No. 348698)
        Joshua A. Fowkes (D.C. Bar No. 494700)
        ARENT FOX PLLC
        1050 Connecticut Avenue, N.W.
        Washington, DC  20036-5339
        (202) 857-6000
        tepper.gary@arentfox.com
        fowkes.joshua@arentfox.com

        Attorneys for Defendants
        Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc. and
        G.E. Capital Mortgage Services, Inc.

December 1, 2006

**CERTIFICATE OF SERVICE**

I certify that I have this 1st day of December 2006, caused the foregoing Defendants Wells Fargo Bank, N.A.'s, Wells Fargo Home Mortgage, Inc.'s, and G.E. Capital Mortgage Services, Inc.'s Reply to Plaintiffs' Opposition to Motion to Dismiss Amended Complaint to be served via ECF upon:

>Travis A. Murrell, Esq.
>1501 11th St., NW,
>Washington, DC  20011
>
>Diane Rosenberg, Esq.
>Mark D. Meyer, Esq.
>ROSENBERG & ASSOCIATES, LLC
>7910 Woodmont Avenue
>Bethesda, MD  20914
>
>L. Darren Goldberg, Esq.
>Rita Ting Hopper, Esq.
>David McPherson, Esq.
>DRAPER & GOLDBERG, PLLC
>803 Sycolin Road, Suite 301
>Leesburg, VA  20175

                                        */s/ Joshua A. Fowkes*